(No. 59766.—)

# LARRY CLARKSON, Appellant, v. WILLIAM WRIGHT, Appellee.

*Opinion filed July 17, 1985.—Rehearing denied September 27, 1985.*

RYAN, MILLER and MORAN, JJ., dissenting.

Lester Berry Smith, Ltd., of Peoria (Robert W. Burnett, of counsel), and William J. Harte, Ltd., of Chicago (William J. Harte and John B. Austin, of counsel), for appellant.

Heyl, Royster, Voelker & Allen, of Peoria (Duncan B. Cooper III and Stephen J. Heine, of counsel), for appellee.

George M. Elsener, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Cassidy & Mueller, of Peoria (David B. Mueller and Timothy J. Cassidy, of counsel), for *amicus curiae* Illi-

nois Defense Counsel.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Larry Clarkson, appealed from the judgment of the circuit court of Peoria County entered upon a jury verdict in his favor against defendant, William Wright. The appellate court affirmed (121 Ill. App. 3d 230), and we allowed plaintiff's petition for leave to appeal (94 Ill. 2d R. 315(a)). The facts are adequately set forth in the opinion of the appellate court and will be stated here only to the extent necessary to discuss the issues.

Plaintiff was injured when the automobile owned by his employer and being driven by plaintiff was struck by defendant's automobile. Plaintiff brought this action seeking damages for the injuries which he alleged were caused by defendant's negligence. Plaintiff alleged that he suffered a fractured wrist and serious facial lacerations, and special damages of $5,629 for medical expenses of $2,509, and lost wages of $3,120. The jury returned a verdict for plaintiff in the amount of $3,620, which was reduced by 50% to $1,810 based upon the jury's determination of the parties' comparative negligence.

Plaintiff contends that because defendant failed to prove that the seat belt in the automobile was in working order and available for use the circuit court erred in admitting evidence of plaintiff's failure to use a seat belt. He argues that the "present Illinois rule that the seat belt defense can be considered in mitigation of damages is unsound." (See *Mount v. McClellan* (1968), 91 Ill. App. 2d 1.) Plaintiff and *amicus curiae*, the Illinois Trial Lawyers Association, argue too that, with the adoption of comparative negligence, evidence of the failure to use a seat belt will result in a double reduction of damages

because juries will consider it both in their comparative-negligence deliberations and will further reduce damages to the extent which they determine use of the seat belt would have prevented.

Defendant contends that "consistent with principles of equitable distribution and apportionment of loss," evidence of plaintiff's failure to use a seat belt requires a reduction in his damages where the failure to use a seat belt has resulted in additional or enhanced injuries. Defendant argues that the "overwhelming recognition of the efficacy of seat belts by both the scientific community and the courts of sister States supports the consideration of plaintiff's failure to wear an available seat belt to reduce recoverable damages." *Amicus curiae*, the Illinois Defense Counsel, argues that a plaintiff is under a duty to exercise ordinary care for his safety and that this "duty extends to the utilization of restraints to avert or mitigate against the consequences of vehicular collisions." Defendant contends too that plaintiff's failure to use a seat belt was properly admissible both on the issue of comparative negligence and plaintiff's failure to mitigate damages under the doctrine of avoidable consequences, but more appropriately should be considered on the issue of liability.

The question whether failure to use a seat belt may be shown in automobile personal injury litigation either as evidence of contributory negligence or as failure to mitigate damages has been the subject of much controversy. See, *e.g.*, Annot., *Nonuse of Automobile Seatbelts as Evidence of Comparative Negligence*, 95 A.L.R.3d 239 (1979); Annot., *Automobile Occupant's Failure to Use Seat Belt as Contributory Negligence*, 92 A.L.R.3d 9 (1979); Annot., *Nonuse of Seat Belt as Failure to Mitigate Damages*, 80 A.L.R.3d 1033 (1977); Snyder, *The Seat Belt as a Cause of Injury*, 53 Marq. L. Rev. 211 (1969–70); Kleist, *The Seat Belt Defense—An Exercise*

*in Sophistry,* 18 Hastings L.J. 613 (1966-67); J. Stein, Damages and Recovery, Personal Injury and Death Actions sec. 127 (1972); 2 M. Bender, The Seat Belt Defense, Damages in Tort Actions sec. 16.40 *et seq.* (1984).

Although this court has not previously considered the issue, the appellate court has done so on a number of occasions. The rule as stated in the opinions of the appellate court is that the trier of fact may not consider the failure to use seat belts on the issue of liability (*Josel v. Rossi* (1972), 7 Ill. App. 3d 1091), but may be instructed with respect to the failure to use seat belts on the issue of damages if there is competent evidence to show a causal connection between the plaintiff's failure to use an available belt and the injuries and damages sustained. (*Eichorn v. Olson* (1975), 32 Ill. App. 3d 587.) Prosser describes the relationship between plaintiff's negligence and his duty to mitigate damages as follows:

> "Closely allied to the doctrine of contributory negligence is the rule of 'avoidable consequences,' which denies recovery for any damages which could have been avoided by reasonable conduct on the part of the plaintiff. Both rest upon the same fundamental policy of making recovery depend upon the plaintiff's proper care for the protection of his own interests, and both require of him only the standard of the reasonable man under the circumstances." Prosser, Torts sec. 65, at 422—23 (4th ed. 1971).

We fail to perceive the value of attempting to analyze, compare or reconcile the many decisions reviewed in the authorities cited. We agree with the majority view that failure to use a seat belt was not negligence or contributory negligence which caused the accident out of which plaintiff's injuries arose. At most, the failure to use a seat belt created a condition which possibly may have increased the severity of plaintiff's injuries.

Section 12—603 of the Illinois Vehicle Code (Ill. Rev.

Stat. 1979, ch. 95½, par. 12—603) required the installation of two sets of seat belts in the front seat of all automobiles manufactured after 1964 and prohibited any person from operating an automobile manufactured after 1960 which is not so equipped. The statute contained no requirement that seat belts be used until the enactment of Public Act 83—1507 ("An Act to add Section 12—603.1 to 'The Illinois Vehicle Code,' " approved January 8, 1985, effective July 1, 1985), which in pertinent part, provides:

> "(a) Each driver and front seat passenger of a motor vehicle operated on a street or highway in this State shall wear a properly adjusted and fastened seat safety belt; ***.

> * * *

> (d) A violation of this Section shall be a petty offense and subject to a fine not to exceed $25." Ill. Rev. Stat., 1985 Supp., ch. 95½, par. 12—603.1.

Once plaintiff suffered an injury there was, of course, a duty to mitigate the damages in any reasonable way possible. That duty to mitigate damages which arose subsequent to the injury is, however, clearly distinguishable from any duty which existed prior to the injury. Here, there was no statutory duty to wear a seat belt and the presence of the seat belt in the automobile did not create the duty to wear it any more than would the presence in the automobile of a protective helmet create a duty to wear that. We find no authority which imposed on plaintiff the duty to anticipate and guard against defendant's negligence.

We conclude that the rule, followed in a majority of the jurisdictions which have considered the question (see Note, *The Seat Belt Defense: A Comprehensive Guide for the Trial Lawyer and Suggested Approach for the Courts*, 56 Notre Dame Law. 272, 273, n.9 (1980)), that evidence of failure to wear a seat belt should not be ad-

mitted with respect to either the question of liability or damages, is a sound one which should be followed in this jurisdiction.

We note that during the pendency of this appeal the General Assembly enacted Public Act 83—1507, which, consistent with our holding here, contains the following provision:

> "(c) Failure to wear a seat safety belt in violation of this Section shall not be considered evidence of negligence, shall not limit the liability of an insurer, and shall not diminish any recovery for damages arising out of the ownership, maintenance, or operation of a motor vehicle." Ill. Rev. Stat., 1985 Supp., ch. 95½, par. 12—603.1.

For the reasons stated, the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court of Peoria County for further proceedings consistent with this opinion.

*Judgments reversed;*
*cause remanded.*

JUSTICE RYAN, dissenting:

I believe that the plaintiff's failure to use a seat belt is evidence that the jury may properly consider in determining the amount of plaintiff's damages. I, therefore, dissent.

This State has recently adopted the pure form of comparative negligence. Therefore, in considering the seat-belt defense it is not appropriate to think in terms of contributory negligence, that is, conduct on the part of the plaintiff which will defeat recovery. Under comparative negligence, we must consider plaintiff's failure to use an available seat belt in terms of reducing the amount of the plaintiff's damages. Some discuss plaintiff's duty in such situations in terms of "mitigation of damages" or "avoidable consequences." We need not try to classify plaintiff's duty. We should simply hold that

plaintiff's recovery may be diminished to the extent that his failure to use an available seat belt contributed to his injuries.

States adhering to the contributory-negligence theory have generally been unwilling to hold that plaintiff's failure to use a seat belt bars recovery. However, one commentator has stated: "There is a growing body of case authority and scholarly comment which indicates that although evidence of a failure to fasten a seat belt is inadmissible to show contributory negligence, such evidence should be admissible under a comparative negligence standard." Miller, *The Seat Belt Defense Under Comparative Negligence,* 12 Idaho L. Rev. 59, 60 (1975).

Also, another commentator stated:

> "Jurisdictions employing the standard of comparative negligence need not engage in any flights of intellectual fantasy to use the seat belt rule as a mechanism to assure the proper apportionment of damage recoveries. By its very nature, the concept of comparative negligence contemplates the inclusion of all relevant factors in arriving at the appropriate amount of damages to be recovered by each of the claimants. It must be concluded, therefore, that the advent of the comparative negligence standard, when coupled with the refined version of the reasonably prudent person standard, will ineluctably lead to the adoption of the seat belt rule as a significant element of the damage apportionment equation." Hoglund and Parsons, *Caveat Viator: The Duty To Wear Seat Belts Under Comparative Negligence Law,* 50 Wash. L. Rev. 1, 14-15 (1974).

In *Alvis v. Ribar* (1981), 85 Ill. 2d 1, this State, by judicial decision, abandoned the defense of contributory negligence and adopted the principle of pure comparative negligence. In doing so, this court made these statements:

> "Under a comparative negligence standard, the parties are allowed to recover the proportion of damages *not at-*

*tributable to their own fault.* The basic logic and fairness of such apportionment is difficult to dispute." (Emphasis added.) (85 Ill. 2d 1, 16.)

"[W]e believe that the need to deter negligent parties supports the adoption of the comparative negligence doctrine in which *each party would be liable for damages in direct proportion to his degree of carelessness.*" (Emphasis added.) (85 Ill. 2d 1, 18.)

"The 'pure' form of comparative negligence is the only system which truly *apportions damages according to the relative fault of the parties* and, thus, achieves total justice." (Emphasis added.) (85 Ill. 2d 1, 27.)

Thus, the principle underlying pure comparative negligence, as adopted in *Alvis*, is fairness. Damages are apportioned according to the relative fault of the parties. The parties are permitted to recover damages *"not attributable to their own fault."* (Emphasis added.) 85 Ill. 2d 1, 16.

It therefore appears that, to be consistent with our holding in *Alvis*, a plaintiff should not be permitted to recover damages brought about by his failure to wear a seat belt if a reasonably prudent person would be expected to use a seat belt under similar circumstances.

The majority opinion notes that the act in effect at the time of the accident only required that automobiles be equipped with seat belts and contained no requirement that seat belts be used by the occupants. (Ill. Rev. Stat. 1979, ch. 95½, par. 12—603.) If the statute would have required the use of seat belts as it now does, that would have been a reason to consider whether the plaintiff's failure to use the seat belt constituted negligence *per se.* Such a statute imposes a duty on the passenger to use the seat belt. (See Kircher, *The Seat Belt Defense—State of the Law,* 53 Marq. L. Rev. 172, 174 (1970).) The Supreme Court of Wisconsin, in *Bentzler v. Braun* (1967), 34 Wis. 2d 362, 149 N.W.2d 626, consid-

ered the Wisconsin statute which only required that automobiles be equipped with seat belts and did not require the passengers to use them. The court stated:

> "While we agree with those courts that have concluded that it is not negligent *per se* to fail to use seat belts where the only statutory standard is one that requires the installation of the seat belts in the vehicle, we nevertheless conclude that there is a duty, based on the common-law standard of ordinary care, to use available seat belts independent of any statutory mandate." (34 Wis. 2d 362, 385, 149 N.W. 2d 626, 639.)

Thus, the fact that there was no statutory duty to wear a seat belt (which is noted in the majority opinion) did not relieve the plaintiff of a common law duty to use ordinary care. If a reasonably prudent person, under similar circumstances, would have used the available seat belts, then the plaintiff had a duty to do so.

The majority opinion states that the duty to mitigate damages applies only to those damages which arise after the injury. Under comparative negligence we have abandoned the rigid doctrines associated with contributory negligence and the fine lines of demarcation surrounding such doctrines. We should not attempt to continue to apply the same rigid limitations of those concepts designed to avoid the harshness of contributory negligence when applying the same principles under comparative negligence. The "avoidable consequences" or "mitigation of damages" principles referred to in the majority opinion were doctrines applied in jurisdictions where plaintiff's contributory negligence was a complete defense to enable the courts to equitably separate damages attributable to the plaintiff's conduct without completely defeating the plaintiff's claim against the defendant. Under comparative negligence there is no longer a need or reason to define artificial lines or times beyond which the court cannot consider the doctrines of avoidable conse-

quences or mitigation of damages as a means of equitably apportioning damages.

Dean Prosser, in discussing whether plaintiff's preinjury conduct which did not cause the accident can be considered in assessing damages, notes that "Iowa and Kansas *** have apportioned the damages, holding that the plaintiff's recovery will be reduced to the extent that [the plaintiff's injuries] have been aggravated by his own antecedent negligence." Prosser continues, *"This would seem to be the better view,* unless we are to place an entirely artificial emphasis upon the moment of impact, and the pure mechanics of causation." (Emphasis added.) (Prosser, Torts sec. 65, at 424 (4th ed. 1971).) In support of this proposition, Dean Prosser states: "This has been applied where plaintiff's failure to use a seat belt has not caused the collision, but has contributed to the damages from it." Prosser, Torts sec. 65, at 424 n.75 (4th ed. 1971).

The majority opinion is correct in noting that the question we are now considering has been the subject of much controversy. I am not as sure as is the majority opinion that the conclusion it has reached represents the majority view in this country, especially in pure comparative-negligence jurisdictions. Some courts that have rejected the seat-belt defense were in jurisdictions wherein contributory negligence was a defense. Some were in jurisdictions that applied a modified form of comparative negligence. In some cases the defense was rejected because of the manner in which it was raised or pleaded. See Kircher, *The Seat Belt Defense—State of the Law,* 53 Marq. L. Rev. 172 (1970).

Regardless of where the numerical majority of jurisdictions may stand on the issue, we must not lose sight of the fact that we have only recently, in *Alvis,* abandoned the artificially harsh doctrine of contributory negligence. We have adopted in its stead the principle of

pure comparative negligence based on the equitable and fair rationale that a party should recover for the damages caused by the other party and should not recover for the damages he himself has caused. We should not now adopt exceptions to our new doctrine of comparative negligence which will make it a little less than "pure." Principles of law have a way of collecting exceptions to accommodate special interests. I view the majority opinion as an exception to our new doctrine which permits the plaintiff to recover more than he otherwise would be entitled to under the rationale behind the doctrine of pure comparative negligence. If, under the facts and circumstances of the case, a reasonably prudent person would have used the available seat belt in the automobile, and if the plaintiff received more severe injuries from the accident as a result of not wearing the seat belt, this is information the jury has a right to consider in assessing damages.

The majority opinion refers to the fact that Public Act 83—1507, effective July 1, 1985, provides that failure to wear a seat safety belt in violation of the statute shall not be considered evidence of negligence and shall not diminish any recovery for damages. The majority opinion notes that this statutory provision is consistent with the holding of this opinion. We have not as yet passed on the constitutionality of Public Act 83—1507. It would appear that the provision just referred to is inconsistent with an earlier provision of the Act which requires each driver and front-seat passenger of a motor vehicle to wear a properly adjusted and fastened seat safety belt and makes it a petty offense not to do so. Thus the legislature, in the Act, has said that it is dangerous for a passenger in an automobile not to wear a seat belt; therefore, the law requires that front-seat passengers wear seat belts or they will be fined for not doing so. However, if such a passenger is injured in an ac-

cident caused by another, the amount of damages caused by his failure to wear a seat belt (although he may be fined) cannot be deducted from his total recovery. The Act creates a duty on specified passengers to wear seat belts and enforces that duty by providing a fine for the violation. Consistency would seem to require that, in considering the question of damages, a violation of this statutory duty should at least be considered as evidence of plaintiff's failure to act as a reasonably prudent person. Inferentially, the Supreme Court of Wisconsin, in *Bentzler v. Braun,* considered that failure to use available seat belts, when the statute by its terms requires their use, may be negligence *per se.* (See also Kircher, *The Seat Belt Defense—State of the Law,* 53 Marq. 172, 174 (1970).) In *Spier v. Barker* (1974), 35 N.Y.2d 444, 323 N.E.2d 164, 363 N.Y.S.2d 916, the New York Court of Appeals noted that the statute of that State does not require passengers of automobiles to wear seat belts. Therefore, plaintiff's failure to do so would not be considered by the court to be negligence *per se.* However, relying on section 65 of Prosser, Torts (4th ed. 1971), which I referred to above, the New York court held that the jury could consider plaintiff's nonuse of a seat belt in assessing damages. The language of Public Act 83—1507, which provides that the failure to wear a seat safety belt shall not be considered evidence of negligence, is similar to that found in statutes requiring seat-belt installation but not their use that have been enacted in Iowa, Maine, Minnesota, Tennessee, and Virginia. See Kircher, *The Seat Belt Defense—State of the Law,* 53 Marq. L. Rev. 172, 176 (1970).

For the above reasons, I dissent from the opinion of the majority of this court.

JUSTICE MORAN joins in this dissent.

JUSTICE MILLER, also dissenting:

I join in Justice Ryan's dissent insofar as the dissent relates to accidents which occurred subsequent to the effective date of this court's holding in *Alvis v. Ribar* (1981), 85 Ill. 2d 1. Because the questions have not been presented, I would express no opinion at this time with regard to the constitutionality of Public Act 83—1507 or its effect on the views expressed in Justice Ryan's dissent.