BLOMMER CHOCOLATE COMPANY, Employers Insurance of Wausau, and Old Republic Insurance Company, Plaintiffs,

v.

BONGARDS CREAMERIES, INC. and J.M. Swank Company, Inc., Defendants.

J.M. SWANK COMPANY, INC., Third Party Plaintiff,

v.

PACEMAKER, LTD., Third Party Defendant.

No. 83 C 536.

United States District Court, N.D. Illinois, E.D.

Sept. 18, 1986.

Scott W. Hansen, Jeffrey P. Clark, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, Wis., for plaintiff Blommer Chocolate Co.

Deborah L. LaDolce, Law Offices of Roderick J. Bergin, Chicago, Ill., for defendant-third party plaintiff J.M. Swank Co.

James T. Martin, Gislason, Martin & Varpness, P.A., Edina, Minn., Henry J. Marquard, William E. Spizziri, Kralovec, Marquard, Doyle & Gibbons, Chartered, Chicago, Ill., for defendant Bongards Creameries, Inc. and third party defendant Pacemaker, Ltd.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This case is about who will bear the losses stemming from the presence of salmonella in whey that went into chocolate coatings. Bongards Creameries, Inc. made the whey and sold it to Pacemaker, Ltd., a dairy products broker, which sold it to J.M. Swank Co., Inc., a food broker, which sold it to Blommer Chocolate Company, Inc., which combined it with other products into chocolate which was sold to customers of Blommer before the contamination was discovered. The story so far may be found in *Blommer Chocolate Co. v. Bongards Creameries, Inc.*, 635 F.Supp. 911 (N.D.Ill.

1985) and 635 F.Supp. 919 (N.D.Ill.1986). Blommer has a summary judgment against Swank on three breach of warranty counts of its complaint, and Swank has a summary judgment shifting that liability to Pacemaker and Bongards for breaches of the same three warranties.

Bongards (on behalf of itself and of Pacemaker, which tendered defense to Bongards) now moves for "reconsideration and/or for clarification" of this court's order granting summary judgment to Swank, 635 F.Supp. 919. It argues (1) that we improperly held that Bongards had waived the issues of causation and nature of the warranty by failing to contest them during Blommer's motion against Swank; and (2) that the decision needs to be clarified, since it appears to foreclose a defense that Blommer's failure to discover the salmonella contamination on its own releases Bongards from part or all of its liability. Bongards thinks that Blommer's failure to discover the defect in the whey constituted contributory fault and that such contributory fault is a defense to an action for a breach of warranty. This court denies reconsideration, and clarifies that Bongards and Pacemaker cannot use Blommer's failure to discover the salmonella contamination earlier as a defense.

Bongards' first argument is easily disposed of. It maintains that it was misled by this court at an earlier status conference as to the timing of when it should contest causation and difference in warranties. We do not think so. Bongards and Pacemaker had chosen not to contest Blommer's motion well before the comment Bongards mentions was made. Nevertheless, timing did not control our decision. While this court commented that the defendants could, and probably should, have submitted their evidence earlier, we expressly declined to base our holding on any waiver:

> However, this court need not rest its decision solely on the intricacies of third-party practice. Even with Pacemaker's evidence, there is no genuine issue of fact as to whether Pacemaker breached

its warranty to Swank in a way which caused Blommer's injuries.

\*   \*   \*   \*   \*   \*

> Nevertheless, as on the previous count, we need not rest our holding on that technical ground [of waiver].

635 F.Supp. at 926, 928. We then went on at some length to evaluate the questions in the light of the evidence submitted, and reached the legal conclusion that Swank had nevertheless met its burden under Fed. R.Civ.P. 56 of showing the absence of any genuine factual issue on the questions of causation and difference in warranties. We regret any confusion created by any comments of this court that may appear inconsistent. However, since we did not decide on the basis of any waiver, Bongards' waiver argument provides no ground for reconsideration of the decision.

The second line of argument is a bit difficult to follow. Bongards' motion itself says:

> These parties have pleaded plaintiff's contributory fault or negligence as an affirmative defense to plaintiff's claims. The defense is based upon a failure on the part of the plaintiffs to mitigate damages as well as Blommer's failure to discover the alleged breach within a reasonable time after tender of the goods was accepted. UCC 2–607(c)(1) [sic].

(Motion for reconsideration, ¶ 2).

The argument is bewildering. No Uniform Commercial Code section "2–607(c)(1)" exists. The probable intent of Bongards' statutory reference, UCC § 2–607(3)(a), Ill.Rev.Stat. ch. 26, ¶ 2–607(3)(a), is actually a notice provision which reads:

> Where a tender has been accepted, the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.

Bongards does not allege any failure of timely notice by Blommer or prejudice from such failure. Nor could it, since under Illinois law Blommer was only under a duty to give notice to Swank, its immediate seller. *Blommer,* 635 F.Supp. at 918; *Gold-*

*stein v. G.D. Searle & Co.,* 62 Ill.App.3d 344, 348, 378 N.E.2d 1083, 1087, 19 Ill.Dec. 208, 212 (1st Dist.1978).

It is possible that Bongards has confused this provision of the UCC with § 2–608(2), which is not a notice provision, and reads:

> Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it . . .

We note, however, that this section deals with the preconditions for revocation of acceptance of goods. The question at the heart of this suit is not whether or not Blommer can return the two unopened bags of whey.[1]

What is more likely is that Bongards is actually attempting to make an argument which could be appropriate under UCC § 2–715(2), the provision on consequential damages. A plaintiff in a breach of warranty action may recover both incidental and consequential damages. *See* § 2–714(3). Consequential damages include "injury to person or property proximately resulting from any breach of warranty." § 2–715(2)(b). A plaintiff's conduct thus is relevant to consequential damages. The question is whether the plaintiff's own acts helped to cause the damage. Comment 5 to § 2–715 elaborates:

> Where the injury involved follows the use of goods without discovery of the defect causing the damage, the question of 'proximate' cause turns on whether it was reasonable for the buyer to use the goods without such inspection as would have revealed the defects.

Here Blommer did not discover the presence of salmonella until after it had used the whey to make chocolate and sold that chocolate to customers. Thus, not only Blommer's plant but those of several of its customers required expensive decontamination.

Bongards' memoranda indicate that in spite of the garbled statutory reference, it is in fact pursuing this line. For example:

> Bongards and Pacemaker have claimed all along that Blommer had a separate obligation to test the product for the presence of salmonella and the evidence is that Blommer did not discover any salmonella in the whey until after the product had been incorporated into Blommer's chocolate products . . . Comparative fault is certainly a valid defense in respect to the claim for consequential damages.

(Bongards' First Memorandum at 2). Elsewhere, Bongards comments on what it considers a "duty to observe good manufacturing practices" including "inspection and appropriate testing of raw materials," which in its opinion both Blommer and Blommer's customers had (Bongards' Second Memorandum at 2). It argues that "the breach of duties by Blommer and its customers . . . contributed to cause the contamination-related damages . . ." (*Id.* at 3.) It then purports to rely on cases which, in actions for strict liability in tort, have considered the plaintiff's conduct and reduced the damage award by applying the principles of comparative fault. It concludes, "Bongards and Pacemaker cannot be made to shoulder the whole of the losses when Blommer and its customers were guilty of the same failures that Bongards has been held to." (Bongards' Second Memorandum at 4). The argument then must be that somehow Blommer is at fault for failing to find the salmonella in the whey which came to it warranted salmonella-free, and that fault precludes Bongards' liability for consequential damages.

---

1. Nevertheless, Blommer probably had that right. Revocation is possible when a non-conformity substantially impairs the value of the goods and the failure to discover the non-conformity "was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurance." UCC § 2–608(1)(b). The parties agree that salmonella is notoriously difficult to discover, 635 F.Supp at 927, and Blommer had been assured that the whey was salmonella free. Such factors go into a determination of how much time is reasonable before a defect is discovered. *See, e.g., GNP Commodities, Inc. v. Walsh Heffernan Co.,* 95 Ill.App.3d 966, 420 N.E.2d 659, 51 Ill.Dec. 245 (1st Dist. 1981) (frozen pork bellies).

■ Bongards' argument is novel, but it will not stand up to an examination of the relevant law. The whole point of obtaining a warranty is to get a product that will not have to be meticulously combed in a search for defects. The law protects that principle, not to mention consumers, by shifting the losses from any defect to the party best able to guard against defects, the party who made the product. If a buyer and seller are "guilty of the same failures," but the seller has extended a warranty against those failures, the seller is liable. Bongards is liable here.

If Blommer had a duty to inspect and test the whey, it owed that duty to its customers downstream. No case or code provision which we can find suggests that Bongards can somehow twist that duty so that it is owed to the manufacturer upstream. The strict liability cases themselves bear that out. For example, the Restatement (Second) of Torts, § 402A, comment n, expressly does not recognize a plaintiff's negligence as a defense to strict liability "when such negligence consists merely of a failure to discover the defect of the product, or to guard against the possibility of its existence." Illinois case law follows the same approach. When the Illinois Supreme Court approved the use of comparative fault analysis for strict liability actions in *Coney v. J.L.G. Industries, Inc.*, 97 Ill.2d 104, 119, 454 N.E.2d 197, 204, 73 Ill.Dec. 337, 344 (1983), it also held that only misuse of the product or assumption of the risk was relevant to that analysis:

> Unobservant, inattentive, ignorant, or awkward failure to discover or guard against a defect should not be compared as a damage-reducing factor.

*Accord: Simpson v. General Motors Corp.*, 108 Ill.2d 146, 483 N.E.2d 1, 90 Ill.Dec. 854 (1985) (evidence of plaintiff's contributory negligence not admissible in products liability case). *See also Pell v. Victor J. Andrew High School*, 123 Ill. App.3d 423, 462 N.E.2d 858, 78 Ill.Dec. 739 (1st Dist.1984) (buyer's careless assembling of trampoline with warning not visible to user not a damage-reducing factor).

The instant case, of course, is not an action for strict liability in tort, but rather for breach of warranty under the UCC. Nevertheless, the analysis on this point is virtually identical. *Coney* concluded that failure to discover a defect would not reduce liability after observing that at strict liability a plaintiff's conduct is only relevant to the question of what proximately caused the damages. 97 Ill.2d at 118, 454 N.E.2d at 204, 73 Ill.Dec. at 344. Similarly, in a UCC claim for consequential damages following breach of warranty, plaintiff's conduct matters only to the extent that it affects causation. The ultimate question is whether the breach of warranty caused the injury. Plaintiff's acts appear only as a subset within that larger question, *i.e.*, whether the injury is fairly traceable to those acts rather than to the breach. *See* UCC § 2–314, comment 13; § 2–715, comment 5; *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill.App.3d 1068, 1075–1077, 455 N.E.2d 19, 24–25, 67 Ill.Dec. 727, 732–733 (5th Dist.1982).

Thus, when a defendant can only charge a plaintiff with failure to discover a defect, plaintiff's conduct is ordinarily not a defense against warranty liability any more than it is to strict liability in tort. A user of a product is entitled to believe that the product will do the job for which it was made. *Coney*, 97 Ill.2d at 119, 454 N.E.2d at 204, 73 Ill.Dec. at 344. If the defective product was put to its normal use, a plaintiff's failure to inspect could supersede the breach of warranty as the cause of damage only if the defect was blatantly obvious beforehand, so that even a cursory visual inspection would have revealed it. *See, e.g., General Instrument Corp. v. Pennsylvania Pressed Metals, Inc.*, 366 F.Supp. 139, 148–150 (M.D.Pa.1973), *aff'd mem.* 506 F.2d 1051 (3d Cir.1974) (over an inch of oil accumulated where no oil should have been; oil also dark brownish green while conforming oil would have been light yellow).

For example, in *Crest Container*, the coils in steam heating units were made from one-half inch tubing which stood ver-

tically in the unit, while the specifications had called for coils of at least five-eighths inch tubing pitched off vertical. The contractor who installed the heating system apparently failed to discover the defects despite numerous repairs to the system over a two-year period. The customer, who finally installed a totally new system, had recovered incidental and consequential damages from that contractor. On the contractor's breach of warranty claim to shift those damages to the manufacturer of the unit, the Illinois Appellate Court reversed a directed verdict for the manufacturer. Despite the contractor's many opportunities to notice the defective coils, whether that conduct or the defect itself had proximately caused the damages was a jury question. 111 Ill.App.3d at 1076–1077, 445 N.E.2d at 25, 67 Ill.Dec. at 733. *See also Bevard v. Howat Concrete Co.*, 433 F.2d 1202 (D.C. Cir.1970) (plaintiff's use of concrete despite tests indicating possible defect no defense to liability, since tests did not definitely establish defect).

Here, by contrast, the defect was literally microscopic, indisputably difficult to discover. *Blommer*, 635 F.Supp. at 927. Blommer was entitled to believe that the whey would do the job it was warranted to do, namely become a safe component in chocolate for human consumption. Arguably, it would have been reasonable, in terms of UCC breach of warranty liability, for Blommer to use the whey with no more than a cursory glance for an inspection. *See also* 21 C.F.R. § 118.80(a)(1) (purchasing materials under a supplier's guarantee fully complies with federal regulations for food processors on salmonella). Nevertheless, Blommer made a standard inspection. 633 F.Supp. at 914. Its failure to discover the salmonella before use cannot rise to the level of an intervening or superseding cause which would free Bongards from the consequences of its breach of warranty. The proximate cause of injury for purposes of § 2–715 was the presence of salmonella organisms Bongards had warranted were not there, not Blommer's failure to discover their presence by a standard inspection.

For the same reasons, conduct which did not rise to the level of a defense to liability cannot ordinarily be resurrected under the label of failure to mitigate damages. *Clarkson v. Wright*, 108 Ill.2d 129, 483 N.E.2d 268, 90 Ill.Dec. 950 (1985) (auto accident victim's failure to wear seat belt). Under Illinois law, a duty to mitigate damages arises only after an injury has occurred. To hold otherwise would put the law of damages squarely at odds with the principle that a plaintiff is not expected to anticipate and guard against a defect. *See Clarkson*, 108 Ill.2d at 133, 483 N.E.2d at 270, 90 Ill.Dec. at 952. When, as in the instant case, the defect is difficult to discover, it follows that no duty to mitigate damages from an injury can be imposed until a plaintiff knows or should have known that it has been injured. *See Bevard*, 433 F.2d at 1203 n. 2. Blommer's failure to discover the salmonella before using the whey cannot be called a failure to mitigate damages either.

■ Bongards' argument actually was answered in this Court's earlier memorandum when we held that salmonella in whey from Bongards, and not any conduct by Blommer, was the cause of the salmonella contamination in the chocolate. 635 F.Supp. at 915–916. Bongards is liable for consequential damages under UCC § 2–715(2)(b) because the defect in its product proximately caused the contamination. 635 F.Supp. at 927. We did not expressly hold earlier that Blommer's failure to discover the presence of the salmonella before it made the chocolate was not a superseding or intervening cause as a matter of law, but if Bongards and Pacemaker need that clarification, we do so now. Given the nature of this defect, failure to discover it is no defense to recovery of consequential damages for breach of warranty.

### Conclusion

Defendant-cross-defendant Bongards' and third-party defendant Pacemaker's motion for reconsideration is denied.