Sara RYAN, as guardian ad litem
of S.S., a minor, Plaintiff,

v.

GOLD CROSS SERVICES, INC.,
dba Gold Cross Ambulance, and
William J. Slusher, Defendants.

GOLD CROSS SERVICES, INC., dba Gold
Cross Ambulance, and William J. Slush-
er, Third–Party Plaintiffs and Petition-
ers,

v.

Suzanne O. SMITH, Third–Party
Defendant and Respondent.

No. 940289.

Supreme Court of Utah.

Sept. 20, 1995.

Craig G. Adamson and Eric P. Lee, Salt Lake City, for plaintiff.

Gary B. Ferguson, Salt Lake City, for petitioners.

Stuart L. Poelman, Salt Lake City, for respondent.

DURHAM, Justice:

We granted an interlocutory appeal from a Third District Court ruling upholding the constitutionality of Utah Code Ann. § 41–6–186 and denying defendants' motion to admit at trial evidence of plaintiff's nonuse of an available safety belt. Gold Cross Services, Inc., dba Gold Cross Ambulance, and William J. Slusher (collectively "Gold Cross") argue that the statute acts as a rule of evidence and is therefore a legislative intrusion on the rule-making powers reserved to the Supreme Court under the Utah Constitution. In addition, Gold Cross asserts that the statute acts to create an unreasonable classification of tort defendants in violation of the uniform operation of laws provision contained in the Utah Constitution. We reject these arguments and affirm the trial court.

On November 24, 1991, S.S. was a passenger in an automobile driven by her mother, respondent Suzanne O. Smith, traveling south on 700 East in Salt Lake City, Utah. At the same time, petitioner William J. Slusher was driving north on 700 East in an ambulance owned by petitioner Gold Cross Services, Inc. As Suzanne Smith began a left turn in an intersection, the ambulance collided with the side of her car. Following the accident, S.S. was found outside her vehicle. The parties dispute whether S.S. was wearing a seat belt at the time of the collision. Both S.S. and her mother testified that S.S. was wearing her seat belt at the time of the collision. In contrast, Gold Cross's accident reconstruction experts concluded that S.S. was not wearing her seat belt at the time of the accident and that S.S.'s failure to wear the available seat belt caused her to be ejected through the passenger door, which opened on impact. A Gold Cross expert also concluded that as a result of the ejection from the vehicle, S.S. suffered multiple skull fractures and other injuries that would not likely have occurred had she been restrained and remained in the vehicle.

In June 1992, S.S. filed a complaint through a guardian ad litem against Gold Cross. In February 1994, Gold Cross filed a motion in limine for a determination that Utah Code Ann. § 41–6–186 is unconstitutional and for a ruling that evidence of S.S.'s nonuse of an available seat belt could be admitted at trial.[1] Plaintiff subsequently filed a motion in limine for a ruling that seat belt evidence be excluded from trial. The trial court held the statute to be constitutional, granted plaintiff's motion, denied defendants' motion, and encouraged an immediate interlocutory appeal. Gold Cross petitions for resolution prior to trial on the merits.

Because the issue of constitutionality presents a question of law, "we review the trial court's ruling for correctness and accord it no particular deference." *Mountain Fuel Supply Co. v. Salt Lake City Corp.*, 752 P.2d 884, 887 (Utah 1988). We further note that when reviewing statutes for constitutionality, a statute is presumed constitutional, and "we resolve any reasonable doubts in favor of constitutionality." *Society of Separationists, Inc. v. Whitehead,* 870 P.2d 916, 920 (Utah 1993).

---

1. Section 41–6–186 provides:
    The failure to wear a seat belt does not constitute contributory or comparative negligence, and may not be introduced as evidence in any civil litigation on the issue of injuries or on the issue of mitigation of damages.

Gold Cross contends that section 41–6–186 acts as an evidentiary rule and therefore constitutes an encroachment by the legislature on the judicial function of creating rules of evidence and procedure, *see* Utah Const. art. VIII, § 4, as well as on the judicial function of supervising civil litigation, *see* Utah Const. art. V, § 1. Article VIII, section 4 expressly grants the Utah Supreme Court the power to adopt rules of procedure and evidence and reserves to the legislature the right to amend such rules by a two-thirds majority of both houses. Gold Cross argues that when article VIII, section 4 was adopted in 1985, no rule-making authority over substantive issues was preserved for the legislature.

Prior to the adoption of section 4, the legislature's rule-making power was based on a substantive/procedural distinction. *See Brickyard Homeowners' Ass'n Management Comm. v. Gibbons Realty Co.,* 668 P.2d 535, 539 (Utah 1983). Under this approach, "the legislature enacted laws affecting the substantive rights of litigants and the supreme court created procedural rules for the adjudication of those rights." Kent R. Hart, *Court Rulemaking in Utah Following the 1985 Revision of the Utah Constitution,* 1992 Utah L.Rev. 153, 153; *see also Brickyard,* 668 P.2d at 539. It is Gold Cross's contention that adoption of article VIII, section 4 affirmatively revoked the legislature's substantive rule-making power because the constitution failed to expressly preserve it. Since the adoption of section 4, argues Gold Cross, the legislature has only the authority to amend, not to enact, rules of evidence.

We decline to address this contention directly because we disagree with Gold Cross's characterization of section 41–6–186 as a "rule of evidence or procedure."[2] Instead, we find that section 41–6–186 sets out a substantive principle of law which lies squarely within the legislature's power.

The legislature may regulate, as a matter of public policy and substantive law, the scope of legal definitions of negligence. *See Brickyard,* 668 P.2d at 539 (recognizing legislature's power to adopt statutes of substantive "principles 'which fix and declare the primary rights of individuals as respects their persons and their property'" (quoting *Avila S. Condominium Assoc. v. Kappa Corp.,* 347 So.2d 599, 608 (Fla.1977))). Section 41–6–186 represents a pronouncement of legislative policy around negligence and public safety. Although section 41–6–186 contains language which at first glance appears to be a rule of evidence, i.e., evidence of seat belt use "may not be introduced as evidence," the statute's operative provisions announce a substantive principle: "The failure to wear a seat belt does not constitute contributory or comparative negligence...."

Once the statute is conceptualized as a statement of substantive negligence law, the language regarding admissibility is mere surplusage. Because the statute decrees that nonuse of seat belts is not negligent, evidence thereof is inadmissible under our general relevance rules, regardless of the language in the statute that expressly excludes such evidence. *See* Utah R.Evid. 401, 402. Accordingly, we find that enactment of section 41–6–186 lies within the legislature's function of regulating the substantive legal definitions of negligence and does not violate the separation of powers doctrine in article V, section 1 of the Utah Constitution.

We note that a majority of jurisdictions, by legislation as in Utah or by judicial decision, mandate that failure to use seat belts may not be used as evidence of a plaintiff's contributory negligence. *Quick v. Crane,* 111

---

2. Respondent does not challenge Gold Cross's presumption that this court has the authority to adopt procedural rules. Instead, she directs us to *State v. Banner,* 717 P.2d 1325 (Utah 1986), which this court decided soon after the adoption of section 4. In *Banner,* the court recognized that its authority to adopt rules is limited only by the substantive/procedural distinction: "The limitations on rules announced by this Court which supplant legislative enactments are that the Court may not change the substantive rights of any litigant; the rules must only be procedural in nature." *Id.* at 1333 (citing *Brickyard,* 668 P.2d at 539). Although *Banner* did apply the traditional substantive/procedural distinction, it did not directly address the adoption of section 4 or any impact it may have had on the continuing legitimacy of the traditional substantive/procedural dichotomy in governing the powers of the legislature and this court. Nor do we address this issue today, as it is not required for resolution of this case.

Idaho 759, 727 P.2d 1187, 1208–09 (1986); *see also Clarkson v. Wright,* 108 Ill.2d 129, 90 Ill.Dec. 950, 952, 483 N.E.2d 268, 270 (1985) (finding that majority of states have rejected seat belt defense). The policy reasons for rejecting the seat belt defense are summarized in *Swajian v. General Motors Corp.,* 559 A.2d 1041 (R.I.1989). The court in that case emphasized the substantive public policy questions underlying the seat belt issue:

> We recognize the safety-belt defense for what it is worth—a manifestation of public policy.... Such a determination [that non-use of seat belts is negligent conduct], if desirable, is properly left to the legislature.

*Id.* at 1047. The Utah legislature has made a policy choice regarding legal principles of negligence; it has not enacted an evidentiary rule.

■ We next consider Gold Cross's contention that section 41–6–186 violates the uniform operation of laws provision in article I, section 24 of the Utah Constitution. The essence of the uniform operation of laws principle is that "legislative classifications resulting in differing treatment for different persons must be based on actual differences that are reasonably related to the legitimate purposes of the legislation." *Mountain Fuel Supply Co.,* 752 P.2d at 887 (citing *Malan v. Lewis,* 693 P.2d 661, 670 (Utah 1984)). The test we apply in determining compliance with the uniform operation of laws provision is "whether the classification is reasonable, whether the objectives of the legislative action are legitimate, and whether there is a reasonable relationship between the classification and the legislative purposes." *Blue Cross & Blue Shield v. State,* 779 P.2d 634, 637 (Utah 1989) (citations omitted).

Gold Cross asks the court to apply a so-called "strict scrutiny" standard because the statute "acts substantively to deprive a defendant of his right to be liable only to the extent of his negligence and permits a plaintiff to receive a larger damage award than would be available under regular tort standards." Gold Cross submits in the alternative that even if the court applies the so-called "rational basis" standard, the statute does not pass constitutional review because

the statutory classification has no rational relationship to a legitimate legislative purpose.

■ Before addressing these arguments directly, we point out that Gold Cross's use of the strict scrutiny and rational basis terminology to frame its arguments is unhelpful. Such language comes from federal equal protection analysis under the Fourteenth Amendment and is not readily transposed to the balancing test we apply under the uniform operation of laws provision of the Utah Constitution. *See State v. Mohi,* 267 Utah Adv.Rep. 7, 9, 901 P.2d 991 (June 15, 1995); *Lee v. Gaufin,* 867 P.2d 572, 577 (Utah 1993). Instead, the analysis we utilize for a uniform operation of the laws challenge is that referred to above: (1) whether the classification is reasonable, (2) whether the legislative objectives are legitimate, and (3) whether there is a reasonable relationship between the two. *See Blue Cross,* 779 P.2d at 637. In this case, section 41–6–186 infringes on no fundamental or critical rights of Gold Cross, *see Mountain Fuel,* 752 P.2d at 888, and creates no classifications considered impermissible or suspect in the abstract, *see id.; see also Malan v. Lewis,* 693 P.2d 661, 674 n. 17 (Utah 1984). Therefore, our determination of whether the challenged statute is reasonably related to legitimate legislative objectives does not require a high threshold. *See Mountain Fuel,* 752 P.2d at 888. We keep in mind, however, that it is not our function to defend the merits, desirability, or rationality of legislative action. Rather, our function is to examine the reasonableness of the classification in light of legislative objectives.

■ Having stated the legal principles governing our review of Gold Cross's claims, we proceed to the analysis, beginning with an examination of the statutory scheme to determine precisely what classification is at issue. It is a general rule of Utah law that violation of a safety standard set by statute or ordinance constitutes prima facie evidence of negligence. *Hall v. Warren,* 632 P.2d 848, 850 (Utah 1981). The Motor Vehicle Seat Belt Usage Act, Utah Code Ann. §§ 41–6–181 through –186 (the "Act"), establishes such a safety standard. Unlike most safety

legislation, however, section 41–6–186 sets out an exception, stating that violation of the Act's seat belt requirements "does not constitute contributory or comparative negligence." Thus, a defendant in an automobile negligence action is prohibited from using evidence of the plaintiff's nonuse of an available seat belt to employ the doctrine of comparative negligence, a doctrine which is otherwise available to most tort defendants as a means of decreasing their liability. *See* Utah Code Ann. § 78–27–38 (Supp.1994) (providing that "[n]o defendant is liable to any person seeking recovery for any amount in excess of the proportion of fault attributable to that defendant"). As a part of this statutory scheme, section 41–6–186 creates a class of tort defendants who are treated differently from other tort defendants. Therefore, the primary issue under Gold Cross's uniform operation of laws challenge is whether this disparate treatment is justified.

The three-step analytical model set out above is our tool for determining whether a challenged scheme of nonuniform treatment is justified under the principles of article I, section 24. The first question we address is whether there is anything inherently unreasonable in the legislature's treating defendants in automobile negligence actions where the plaintiff was not wearing a seat belt differently from defendants in other negligence actions. In the abstract, treating these defendants as a class does not constitute discrimination " 'with no rational basis.' " *Mountain Fuel,* 752 P.2d at 890 (quoting *Mountain States Legal Found. v. Public Serv. Comm'n,* 636 P.2d 1047, 1055 (Utah 1981)). It is not unreasonable for the legislature to conclude that using a seat belt is a different order of omission than some other safety violation, such as failure to wear a safety line when painting or a motorcycle helmet when riding. Moreover, the basis on which the classification is delineated is certainly not one that could be labelled impermissible, such as race. *See id.* at 890; *Blue Cross,* 779 P.2d at 640.

■ The second issue we address is the legitimacy of the legislation's objectives. Gold Cross submits that the singular objective of the Act is to prevent or minimize traffic injuries and thereby reduce overall costs for motor vehicle accidents. Gold Cross reaches this conclusion by reviewing the legislative debate leading to passage of the Act. In approaching the issue, however, Gold Cross fails to take into account our approach in reviewing the legitimacy of a legislative purpose. The court does not limit itself to considering only "those purposes that can be plainly shown to have been held by some or all legislators." *Blue Cross,* 779 P.2d at 641. Rather, the court will sustain legislative action if it can reasonably conceive of facts which would justify the classifications made by the legislation. *Id.* Although the court will not accept *any* conceivable reason for the legislative enactment, we do not require exact proof of the legislative purposes; it is enough if a legitimate purpose can be reasonably imputed to the legislative body. *Malan,* 693 P.2d at 671 n. 14; *accord Blue Cross,* 779 P.2d at 641.

Using this approach, we look to the purposes of the challenged statute. Although section 41–6–186 does not, in and of itself, promote safety, it serves other legitimate purposes. Perhaps most important, the statute serves as an adjustment and accommodation of conflicting interests. Indeed, as Gold Cross points out:

> A cursory review of [the] legislative debates [leading to passage of the Act] reveals that discussion centered on two issues. Those in favor of passage of the Act argued for the benefits in terms of injuries prevented or minimized and money saved. Those against passage were concerned with whether the Act infringed on personal freedom to choose whether to wear a seat belt.

We may assume that section 41–6–186 serves to resolve these conflicting interests. Although the Act mandates seat belt use and enforces the mandate with a ten-dollar penalty for violations, the Act also ensures—via section 41–6–186—that failure to wear a seat belt will not be used against a plaintiff in civil litigation. Other portions of the Act appear to serve a similar purpose. For example, section 41–6–185 provides that points for a motor vehicle reportable violation may not be assessed against any person for violation of

the seat belt mandate. We conclude that the legislature may legitimately set a public policy which encourages seat belt use yet at the same time weigh the positive benefits of such a policy against the severity of the penalties for noncompliance.

The legislature also may have legitimately concluded that those whose negligence causes automobile accidents should not escape any portion of liability simply because the injured party was not wearing a seat belt. Indeed, from this standpoint, section 41–6–186 is quite consistent with a common law tort principle commonly referred to as the "thin skull" or "eggshell skull" doctrine: one who injures another takes the injured as she finds him. See, e.g., Brunson v. Strong, 17 Utah 2d 364, 412 P.2d 451, 453 (1966). Under this doctrine, the defendant has to pay for all injuries, even if a given plaintiff is more vulnerable to injury than others. Thus, we can find not only one, but two legitimate legislative purposes behind the challenged legislation. Moreover, we reemphasize that it is not our function to examine the desirability or rationality of the legislative objectives. It is enough if they are legitimate and if the classification used to attain the objectives is reasonable.

Because we can find legitimate objectives behind the legislation, we next address the third question in our analysis: whether the legislature chose a reasonable means to achieve its objectives. We find that the classification resulting from section 41–6–186 is not an unreasonable means for achieving the legitimate objectives discussed above. Mandating that nonuse of a seat belt does not constitute contributory or comparative negligence is a reasonable means of ensuring that a legislated public policy encouraging seat belt use adequately weighs the impingement on personal freedom resulting from such a policy against the severity of the penalties for noncompliance. In addition, the challenged legislation is reasonably related to the legitimate legislative purpose of ensuring that those persons who negligently cause automobile accidents will not escape liability for injuries caused by the plaintiff's nonuse of a seat belt. In sum, we agree with the court below that the classifications created by section 41–6–186 are reasonable and therefore

justifiable in light of the legislation's objectives.

We affirm.

ZIMMERMAN, C.J., and HOWE and RUSSON, JJ., concur.

STEWART, Associate Chief Justice, concurring in the result:

I concur in the majority opinion and write only to note that any implication that may arise from the opinion that there is only one analysis to be applied in all Article I, section 24 cases is not correct. It is clear in *Lee v. Gaufin*, 867 P.2d 572 (Utah 1993), that a heightened standard of scrutiny applies in cases involving constitutionally protected rights. The point has been made in numerous opinions. *See generally Malan v. Lewis*, 693 P.2d 661 (Utah 1984). In *Lee*, we stated:

> Our holding that the heightened-scrutiny standard governs the manner in which Article I, section 24 is applied when Article I, section 11 rights are implicated is supported by the rulings of other courts with respect to medical malpractice statutes and the effect of those statutes on the right to recover for negligently inflicted injuries.

867 P.2d at 583. Justice Durham in *Condemarin v. University Hospital*, 775 P.2d 348, 356 (Utah 1989), stated:

> Other courts have applied a heightened standard of equal protection scrutiny to statutes limiting recovery rights in the medical malpractice area. Some courts have characterized their review as one at an intermediate level, and some have referred to it as a "realistic" review under the rational basis standard. Both approaches, however, involve a real and thoughtful examination of legislative purpose and the relationship between the legislation and that purpose. In the present case, the legislature has not only limited recovery, but it has also extended partial governmental immunity to restrict rights which existed at common law. Therefore, I would apply a heightened standard of review under equal protection.

It should be noted that her statements in the above quotation were in connection with Arti-

cle I, section 24 (the uniform operation of the laws provision), not federal equal protection. *Condemarin,* 775 P.2d at 352. And her due process argument in *Condemarin* was explicitly based on a standard of heightened scrutiny.

I need not in this opinion outline all the differences that exist between application of the uniform operation of the laws provision in cases involving constitutionally protected interests and cases not involving such interests. The essential point here is that to equate the two would be to rob constitutionally protected interests of the protection the constitution was intended to impart to them.