2005 UT App 562

**STATE of Utah, in the interest of Z.C., a person under eighteen years of age.**

**Z.C., Appellant,**

**v.**

**State of Utah, Appellee.**

**No. 20040941–CA.**

Court of Appeals of Utah.

Dec. 30, 2005.

Randall W. Richards and Dee W. Smith, Richards Caine & Allen, Ogden, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Matthew D. Bates, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges McHUGH, ORME, and THORNE.

## OPINION

ORME, Judge:

¶ 1 Z.C., herself a child, appeals the juvenile court's denial of her motion to dismiss a delinquency petition alleging she sexually abused a child. This offense would be a second degree felony if committed by an adult. *See* Utah Code Ann. § 76–5–404.1 (2003). She argues that the statute is unconstitutional as applied to juveniles under fourteen years of age who have uncoerced sex with each other. With some reluctance, we affirm the juvenile court's denial of her motion to dismiss.

## BACKGROUND

¶ 2 In October of 2003, when Z.C. was thirteen years old, she and a twelve-year-old boy engaged in mutually welcome sexual intercourse.[1] As a result, she became pregnant. On July 14, 2004, the State filed a delinquency petition alleging Z.C. had committed sexual abuse of a child, a second degree felony if committed by an adult.[2] *See* Utah Code Ann. § 76–5–404.1 (2003).

¶ 3 Z.C. filed a motion to dismiss the petition on state and federal constitutional grounds, invoking her constitutional rights to due process, equal protection, and uniform operation of the law. At a hearing on October 12, 2004, the juvenile court, although sympathetic to Z.C.'s unique situation, determined that the application of the statute to Z.C. did not violate her constitutional rights and denied her motion to dismiss.

¶ 4 After her motion to dismiss was denied, Z.C. entered an admission conditional on her right to appeal the motion's denial. Based on the admission, the juvenile court then found that the allegations in the State's petition were sufficiently proven. The court imposed very minimal sanctions, however, only ordering Z.C. to write a report addressing the effects of her actions on herself and her baby, to obey the reasonable requests of her parents, to remain under the supervision of the Division of Child and Family Services, to refrain from unsupervised contact with the baby's father, to provide a DNA sample, and to pay a $75 fee associated with the sample. Z.C. now appeals the juvenile court's denial of her motion to dismiss.

## STATUTORY SCHEME

¶ 5 The statutory scheme outlining sexual offenses against juveniles creates three different classes of victims, giving greater protection to minors of progressively more tender years. The scheme punishes sexual activity within the youngest group most severely, providing fewer exceptions and defenses when the victim falls in that category. In contrast, the scheme takes into account other factors, such as age differences and consent, with respect to the two classes of older juveniles.

¶ 6 For the oldest age group—juveniles sixteen and seventeen years of age—having sex with others in their own age group does not even qualify as a sexual offense because the statute governing unlawful sexual conduct with persons in that age group requires that the perpetrator be at least ten years older than the minor victim. *See* Utah Code Ann. § 76–5–401.2 (2003). Juveniles fourteen and fifteen years of age who have sex with each other can be charged with unlawful sexual conduct with a minor, but the statute provides for mitigation when the age difference is less than four years, making the offense only a class B misdemeanor in those situations. *See id.* § 76–5–401. Additionally, juveniles in both of these aforementioned age groups—although "minors" under the statutory scheme, *see id.* §§ 76–5–401 to –401.2—also benefit from the legislative decision that they are legally capable of providing consent to sexual activity. *See id.* § 76–5–406(11). Thus, the rape and forcible sexual abuse statutes do not apply to these

---

1. We deliberately refrain from characterizing the encounter as "consensual," as both participants were clearly below the age of consent. *See* Utah Code Ann. § 76–5–406(9) (2003) (providing that juveniles under fourteen cannot give legal consent to sexual activities).

2. The twelve-year-old boy was also charged with delinquency in juvenile court for this same encounter. Oddly, then, Z.C. and the boy were each a perpetrator and a victim of the same illegal conduct.

groups of minors when their sexual activity is consensual. *See id.* §§ 76–5–402, –404.

¶ 7 Juveniles under fourteen—"children" under the statutory scheme, *see id.* §§ 76–5–402.1, –404.1—have no exceptions or mitigating factors applicable to them.[3] And they are always incapable of giving consent to sexual activity. *See id.* § 76–5–406(9). Thus, sexual activity between children in this age group fits the elements of both sexual abuse of a child, a second degree felony when committed by an adult, *see id.* § 76–5–404.1, and rape of a child, a first degree felony when committed by an adult. *See id.* § 76–5–402.1.

## ISSUE AND STANDARD OF REVIEW

¶ 8 At issue here is whether Utah Code section 76–5–404.1 is unconstitutional as applied to juveniles under the age of fourteen who engage in mutually welcome sexual activities with their peers.[4] Z.C. makes broad reference in her brief to federal and state constitutional provisions, but virtually all of her argument, analysis, and citations focus only on the Utah Constitution's Uniform Operation of Laws Clause. *See* Utah Const. art. I, § 24. Thus, our analysis also centers on this provision.[5]

¶ 9 When evaluating statutes under the Uniform Operation of Laws Clause, "we must determine whether the classification is reasonable, whether the objectives of the legislative action are legitimate, and whether

there is a reasonable relationship between the classification and the legislative purposes." *Blue Cross & Blue Shield v. State,* 779 P.2d 634, 637 (Utah 1989). Z.C. has not argued that a heightened standard of review applies. Indeed, section 76–5–404.1 "infringes on no fundamental or critical rights" and "creates no classifications considered impermissible or suspect in the abstract." *Ryan v. Gold Cross Servs., Inc.,* 903 P.2d 423, 426 (Utah 1995). "Therefore, our determination of whether the challenged statute is reasonably related to legitimate legislative objectives does not require a high threshold." *Id.*

¶ 10 We are also guided by the rule that "[w]hile ruling on the constitutionality of a statute, we will resolve doubts in favor of constitutionality." *State v. Mohi,* 901 P.2d 991, 995 (Utah 1995). Thus, Z.C. bears a heavy burden, and we will uphold the statute unless she can show that legitimate legislative interests are not reasonably related to this particular statutory scheme. *See id.* at 998.

## ANALYSIS

¶ 11 The Utah Constitution provides that "[a]ll laws of a general nature shall have uniform operation." Utah Const. art. I, § 24. This provision protects against discrimination on two levels. "First, a law must apply equally to all persons within a class.

---

3. While the juveniles here were twelve and thirteen years of age, we note that the same statutory scheme applies to *all* children under the age of fourteen.

4. In addition to the constitutional issues which are at the heart of this appeal, Z.C. also argues that our statutory interpretation should focus on the intent of the Legislature, which intent, she argues, surely did not include an outcome such as occurred in this case. "When examining a statute, we look first to its plain language as the best indicator of the legislature's intent and purpose in passing the statute. Only if that language is ambiguous do we then turn to a consideration of legislative history and relevant policy considerations." *Wilson v. Valley Mental Health,* 969 P.2d 416, 418 (Utah 1998). The language in the statute is not at all ambiguous, and we therefore need not look to legislative history or policy considerations.

5. We do not wish to imply, however, that the result would be different under any other constitutional provision mentioned by Z.C. While there are some differences in the application of these provisions, *see, e.g., Ryan v. Gold Cross Servs., Inc.,* 903 P.2d 423, 426 (Utah 1995); *State v. Mohi,* 901 P.2d 991, 997 (Utah 1995); *Malan v. Lewis,* 693 P.2d 661, 670 (Utah 1984), the outcome is very often the same—as it would no doubt be in this case. The federal Equal Protection Clause and Utah's Uniform Operation of Laws Clause "embody the same general principle: persons similarly situated should be treated similarly, and persons in different circumstances should not be treated as if their circumstances were the same." *Malan,* 693 P.2d at 669. And, in this case, the substantive due process requirement that "a statute must rationally further a legitimate governmental interest" has also been met. *State v. Martinez,* 2000 UT App 320, ¶ 24, 14 P.3d 114.

Second, the statutory classifications and the different treatment given the classes must be based on differences that have a reasonable tendency to further the objectives of the statute." *Malan v. Lewis,* 693 P.2d 661, 670 (Utah 1984) (citations omitted).

¶ 12 Z.C. claims that the statutory scheme at issue here does not apply equally to all persons within a class because it treats juveniles under fourteen differently than older juveniles engaged in the same activity—sexual relations with their peers. The class at issue here, however, is not *all* juveniles, but only juveniles under the age of fourteen—the class actually created by the sexual abuse of a child statute. *See* Utah Code Ann. § 76-5-404.1 (2003). All persons within this class are treated equally under the statute.

¶ 13 The question, then, is whether that classification is proper. The Legislature is certainly permitted to make classifications—indeed, the Legislature has "considerable discretion in the designation of classifications." *Malan,* 693 P.2d at 671 (internal quotations and citation omitted). But " 'the legislature [is] restrained from the fundamentally unfair practice' of classifying persons in such a manner that those who are similarly situated with respect to the purpose of a law are treated differently by that law, to the detriment of some of those so classified." *Blue Cross & Blue Shield v. State,* 779 P.2d 634, 637 (Utah 1989) (citation omitted).

¶ 14 Juveniles under the age of fourteen and juveniles over fourteen, however, are not similarly situated with respect to the purpose of the statute. Z.C. herself concedes that children under fourteen need greater protection than older juveniles because the former "have less ability to control impulses, are more susceptible to the influence of others and have less ability to understand moral and intellectual concepts." Thus, twelve- and thirteen-year-olds engaging in sexual activity with each other are not similarly situated—given the purpose of this statute—to older juveniles engaging in sexual activity with each other, because only the former situation involves children within the more vigorously protected age group.

¶ 15 Further, it is not entirely clear whether these classes of juveniles are really treated differently. We note that in the juvenile court system, all juveniles within the jurisdiction of the court are treated similarly. The juvenile court's "main objective is to inquire into bad behavior and its causes and to seek remedies and adjustments in the child, rather than merely to accuse, convict and punish [her]." *In re Lindh,* 11 Utah 2d 385, 359 P.2d 1058, 1059 (1961). *See also* Utah Code Ann. § 78-3a–102(5)(g) (Supp. 2005) (stating that a purpose of the juvenile court is to "act in the best interests of the minor in all cases"). Thus, the juvenile court exercises jurisdiction over a juvenile for actions which, *if done by an adult,* would be a crime, but the juvenile is not charged with or punished for that crime. *See Mill v. Brown,* 31 Utah 473, 88 P. 609, 613 (1907). Juvenile proceedings are "informal and equitable" precisely in order to "avoid[ ] the rigidities and the formidable aspects of the criminal law." *In re Lindh,* 359 P.2d at 1059. While the severity of the referential adult charge is relevant under the sentencing guidelines used in juvenile court, those guidelines are only advisory and the juvenile court has great discretion in determining a sanction consistent with the juvenile's best interests. The rather gentle sanction imposed in the instant case is illustrative of this principle.

¶ 16 Z.C. does, however, note some possible lingering effects of her actions—e.g., more severe enhancements if she is later charged for crimes committed as an adult—that would not follow older juveniles who participated in similar sexual activities with their peers. So, to the extent that these effects qualify as disparate treatment among juveniles, we proceed to the next inquiry. "[I]f any disparate treatment exists between classes or sub-classes, we must determine whether the legislature had any reasonable objective that warrants the disparity." *State v. Mohi,* 901 P.2d 991, 997 (Utah 1995).

¶ 17 The Legislature certainly may act to protect the health and safety of children, and may more vigorously protect those of more tender years. In fact, the Legislature uses language that draws this distinction, consistently using the term "child" to refer to juveniles under fourteen years of age, Utah Code Ann. § 76-5-404.1, and "minor" to refer to juveniles ages fourteen through seven-

teen. *Id.* §§ 76–5–401 to –401.2. As discussed above, the Legislature then proceeds to give greater protection to the former category, countenancing no mitigating factors or exceptions for this younger age group.

¶ 18 We cannot say it is unreasonable that such rigorous protections include protecting those under fourteen from each other as well as from older juveniles and adults. The Legislature is well within its rights to come down solidly against sexual activity with children of such tender years—anywhere, anytime, any place, and by anyone. Such protection, devoid of any exceptions or mitigating factors, has a rational relationship to the legitimate legislative objective of protecting the health and safety of young children, not only from older predators, but also from each other. And we cannot say such strict treatment does not also rationally further those purposes by strongly discouraging *any* sexual conduct involving children.[6]

## CONCLUSION

¶ 19 Z.C. has failed to meet her burden of showing that the classifications created by the statutory scheme or any disparate treatment of those classes is not reasonably related to a legitimate legislative interest behind the statutory scheme. It is reasonable for the Legislature to classify juveniles in this manner, the Legislature has a legitimate interest in protecting the health and safety of children, and any disparate treatment is reasonably related to that interest. We therefore affirm the juvenile court's denial of Z.C.'s motion to dismiss.

¶ 20 WE CONCUR: CAROLYN B. McHUGH and WILLIAM A. THORNE JR., Judges.

---

**6.** "We keep in mind, however, that it is not our function to defend the merits, desirability, or rationality of legislative action." *Ryan v. Gold Cross Servs., Inc.,* 903 P.2d 423, 426 (Utah 1995). Indeed, we do not necessarily endorse this approach by the Legislature, and it is by no means clear that this was a conscious determination on its part. It is somewhat ironic that children so young as to be incapable of giving legal consent to sexual activities may nonetheless be deemed able to form the intent to commit what would be a felony if committed by an adult. If this unusual outcome was indeed a matter of oversight, we encourage the Legislature to effectuate its actual intent by amending the statute, perhaps providing for less serious repercussions for juveniles under fourteen years of age when they engage in mutually welcome sexual activities with their peers.