IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20110381-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (December 13, 2012) |
| Valynne Asay Bowers, | ) | |
| | ) | 2012 UT App 353 |
| Defendant and Appellant. | ) | |

-----

Second District, Farmington Department, 091700341
The Honorable John R. Morris

Attorneys: Scott L. Wiggins, Salt Lake City, for Appellant
Mark L. Shurtleff and Ryan D. Tenney, Salt Lake City, for Appellee

-----

Before Judges Orme, Davis, and Voros.

ORME, Judge:

¶1     Defendant Valynne Asay Bowers appeals her sentence on two counts of forcible sexual abuse, a second degree felony, *see* Utah Code Ann. § 76-5-404 (LexisNexis Supp. 2012),[1] to which she pled guilty. We affirm.

¶2     Defendant was an eighth grade math teacher at a Davis County junior high school. In the fall of 2008, one of her former students began to attend after-school

---

    [1]Because the statutory provisions in effect at the relevant time do not differ materially from the statutory provisions now in effect, we cite the current version of the Utah Code as a convenience to the reader.

tutoring sessions she held in her classroom. Shortly thereafter, the student started sending text messages to Defendant, and the two discussed Defendant's personal and family issues. During these conversations, the student told Defendant that he had engaged in a sexual relationship with another teacher during the previous school year. That other teacher became aware that Defendant was texting with the student and warned her to stop.

¶3 Despite the warnings, Defendant's relationship with the student quickly escalated. They began sending each other sexually suggestive text messages, with Defendant even sending five or six naked photographs of herself. On Christmas Eve in 2008, Defendant engaged in "phone sex" with the student, and over the next month they had phone sex two to three times per week. In early January, Defendant picked the student up and brought him to her home, where they twice had sexual intercourse. The student began giving Defendant guitar lessons at her home on Friday evenings while her teenage daughters were at her ex-husband's home. These Friday lessons continued for two months, and on each occasion Defendant would either perform oral sex on the student or have sexual intercourse with him. In total, Defendant estimated that she had intercourse with the student seven or eight times and performed oral sex on him five or six times.

¶4 Eventually, the other teacher told Defendant that she had decided to go to the police. Defendant asked the teacher to wait until the school year was over. On February 27, 2009, Defendant and the student had their last sexual encounter, and Defendant informed the student that it was "getting too risky," given that the other teacher was considering confessing. The other teacher went to the police early in March. She told the police about her and Defendant's sexual relationships with the student. Officers interviewed Defendant that same night, and she admitted that the allegations were true.

¶5 Defendant was charged with five counts of rape and three counts of forcible sodomy, all first degree felonies. *See* Utah Code Ann. § 76-5-402 (LexisNexis 2008) (rape); *id.* § 76-5-403 (forcible sodomy). The counts required the State to prove that the sexual contact was nonconsensual.[2] *See id.* §§ 76-5-402, -403. The State argued that the

---

[2]The student was fourteen when the sexual encounters with Defendant began. Children younger than fourteen have no ability to consent to sexual activity. *See In re Z.C.*, 2005 UT App 562, ¶ 2 n.1, 128 P.3d 561, (classifying sexual intercourse between a twelve-year-old and a thirteen-year-old as "mutually welcome" rather than "consensual" because the participants were both younger than fourteen and lacked the

(continued...)

student was incapable of consenting because Defendant held a position of special trust as a teacher. *See supra* note 2. Nearly two years after being charged, Defendant pled guilty to two counts of forcible sexual abuse, a second degree felony. *See* Utah Code Ann. § 76-5-404 (LexisNexis Supp. 2012).

¶6 Adult Probation and Parole (AP&P) prepared a Presentence Investigation report (PSI) recommending that Defendant be sentenced to concurrent prison sentences of one to fifteen years. The PSI stated that Defendant "blames no one but herself for what happened and she accepts full responsibility." The report also noted, however, that "both the victim and his mother desire strongly for the defendant to be incarcerated at the Utah State Prison" because "the victim felt as if he'd been attacked by the defendant, due to her placing all of the blame on him for what happened." AP&P credited Defendant for having participated in sex offender therapy for the prior two years but found that "[c]ulpability has been an issue for the defendant since the time of her arrest, and the victim's family believes imprisonment is appropriate due to this issue."

¶7 Defendant also had a private Felony Sentencing Report (FSR) prepared at her own expense. The FSR included a psychological, sexual behavioral, and risk assessment. It highlighted Defendant's truthfulness with authorities, noted that she had completed a sex offender treatment program, discussed Defendant's support network of family and friends, and claimed that her relationship with the student was an "isolated incident." The FSR recommended that Defendant be sentenced to a year in jail without credit for time served; thirty-six months probation, with requirements for sex offender treatment maintenance and compliance with all "Group A Sex Offender Stipulations"; and a $2,500 fine.

¶8 At the sentencing hearing, defense counsel implored the court to sentence Defendant to one year in jail and probation. Counsel argued that Defendant was not "a

---

[2](...continued)
legal ability to consent to sexual activity in any circumstance), *rev'd on other grounds*, 2007 UT 54, 165 P.3d 1206 (Utah 2007). In contrast, the student, as a fourteen-year-old, had a limited ability to consent to sexual activity. *See generally* Utah Code Ann. §§ 76-5-406(10), (11) (LexisNexis 2008) (noting that minors older than fourteen years old but younger than eighteen years old can only consent to sexual activity under certain circumstances). The State asserted that the sexual activity in this case was without consent because Defendant was in "a position of special trust," Utah Code Ann. § 76-5-406(10) (LexisNexis 2008), or "entice[d] . . . the victim to submit or participate," *id.* § 76-5-406(11). The sexual activity was nonconsensual only in a legal sense; at the time it occurred, it was "mutually welcome." *In re Z.C.*, 2005 UT App 562, ¶ 2.

dangerous person, a sexual predator, or a threat to society." Counsel noted that Defendant had completed sex offender treatment and had a support network in place.

¶9 Despite AP&P's recommendation for concurrent sentences, the State asked for consecutive prison sentences of one to fifteen years. The State asserted that Defendant had failed to accept full responsibility for her crimes and pointed out that she had not confessed to authorities until she was implicated by the other teacher. In response to the State's harping on Defendant's status as a teacher, defense counsel stated:

> [T]his isn't a teacher case. This isn't—we addressed that issue. It's not a first degree felony. . . . I think when you look at this, I think you can take into consideration that she was a teacher. I think, you know—and that he was formally[3] her student, but when you look at the facts of the case, there is not that teacher/student aspect.

Counsel argued for concurrent sentences if the court was inclined to impose a prison term, stating that it was "inappropriate" to view Defendant as the victim's teacher since that status was irrelevant to the crimes to which she had ultimately pled guilty.

¶10 Immediately before sentencing Defendant, the court noted that it bore the "responsibility to respond [on] behalf of society." With that, the court sentenced Defendant to two consecutive prison terms of one to fifteen years. The court acknowledged that Defendant presented a low risk for reoffending and recognized her "significant progress" in therapy. The court was particularly concerned, however, that the "conduct with the victim was repeated over a period of months" even though Defendant knew it was wrong and had been urged by the other teacher to stop. The court explained that "what stands out in my mind is the repeated conduct of an adult toward a child, and that adult had every opportunity to change the course of the encounter" and that "[h]ad it been . . . an isolated incident, my thinking would be different, and it might result in . . . a different sentence."

¶11 Defendant argues that the district court erred in sentencing her to consecutive prison terms because it failed to consider all relevant factors and did not account for

---

[3]It is unclear whether defense counsel meant to say "formerly," because the victim was Defendant's student during the previous year, or whether in saying "formally," counsel meant to acknowledge that there was technically a teacher-student relationship of sorts by reason of the after-school tutoring sessions.

mitigating circumstances. Defendant also claims that the district court should have entered findings of fact resolving the question of whether Defendant was acting in her capacity as a teacher at the time of the offenses.

¶12    Trial courts are afforded "wide latitude in sentencing." *State v. Bluff*, 2002 UT 66, ¶ 66, 52 P.3d 1210. "The trial court has substantial discretion in conducting sentencing hearings and imposing a sentence, and we will in general overturn the trial court's sentencing decisions only if we find an abuse of discretion." *State v. Patience*, 944 P.2d 381, 389 (Utah Ct. App. 1997) (internal citations omitted). The court's discretion is not unlimited, however, in that due process "requires that a sentencing judge act on reasonably reliable and relevant information in exercising discretion in fixing a sentence." *State v. Howell*, 707 P.2d 115, 118 (Utah 1985). "Although the court can consider other factors, we have stated that it is an abuse of discretion if a district court relies upon irrelevant information to reach its decision." *State v. Moa*, 2012 UT 28, ¶ 34, 282 P.3d 985.

¶13    The decision to order consecutive or concurrent sentences is governed by statute. *See* Utah Code Ann. § 76-3-401(1) (LexisNexis 2008) (providing that a trial court may impose either concurrent or consecutive sentences when a defendant is convicted of more than one felony). In making its decision, a court must "consider the gravity and circumstances of the offenses, the number of victims, and the history, character, and rehabilitative needs of the defendant." *Id.* § 76-3-401(2). We note that "as a general rule this court upholds the trial court even if it failed to make findings on the record whenever it would be reasonable to assume that the court actually made such findings." *State v. Helms*, 2002 UT 12, ¶ 11, 40 P.3d 626 (citations and internal quotation marks omitted). *See also Moa*, 2012 UT 28, ¶ 35 ("Indeed, as a general rule, we presume that the district court made all the necessary considerations when making a sentencing decision."). The trial court need not "state to what extent it considered each of the statutory factors at the sentencing hearing." *Helms*, 2002 UT 12, ¶ 13.

¶14    In this case, as in *Helms*, the mere "brevity of the sentencing order does not make the order and the facts surrounding the order so ambiguous that it would be unreasonable for us to conclude that the trial court properly considered the factors in section 76-3-401(4)." *See id.* The court was provided with two sentencing reports providing extensive information relating to the statutory factors, and this information was discussed by counsel during their arguments immediately prior to Defendant being sentenced. In imposing sentence, the court indicated that it had received numerous letters in support of Defendant and considered her a low risk for reoffending. After acknowledging these facts, however, the court went on to state, "This really isn't a

popularity contest. It's about the community's response to conduct which through its laws has been deemed unacceptable." While Defendant argues that the court improperly considered her role as a teacher, the court specifically stated that what it found most compelling was the "repeated conduct of an adult toward a child, and that adult had every opportunity to change the course of the encounter."

¶15    Defendant argues that *State v. Galli*, 967 P.2d 930 (Utah 1998), requires that Defendant be sentenced to concurrent sentences. Defendant is wrong for two reasons. First, it simply cannot be said that no reasonable person would take the view adopted by the district court in this case. *See State v. Gerrard*, 584 P.2d 885, 887 (Utah 1978) ("[T]he exercise of discretion in sentencing necessarily reflects the personal judgment of the court and the appellate court can properly find abuse only if it can be said that no reasonable man would take the view adopted by the trial court."). Second, *Galli* has been legislatively abrogated. *See State v. Epling*, 2011 UT App 229, ¶ 20, 262 P.3d 440.

¶16    Defendant has not demonstrated that the district court improperly considered the statutory factors, including factors in mitigation, in sentencing her to consecutive prison sentences. We affirm the district court's sentencing decision.

_____
Gregory K. Orme, Judge

-----

¶17    WE CONCUR:

_____
James Z. Davis, Judge

_____
J. Frederic Voros Jr., Judge