Gregory SWAJIAN et al.

v.

GENERAL MOTORS CORPORATION.

No. 88–513–M.P.

Supreme Court of Rhode Island.

June 12, 1989.

Mark S. Mandell, Jeffrey H. Gladstone, Susan Carlin, Mandell, Goodman, Famiglietti & Schwartz Ltd., Providence, for plaintiff.

Gerald C. DeMaria, Robert J. Quigley, Jr., Higgins, Cavanagh & Cooney, Providence, for defendant.

## OPINION

MURRAY, Justice.

The United States District Court for the District of Rhode Island has certified this products liability action to this court for determination of a single question of law. The suit arose from a one-vehicle accident in which the plaintiff's wife, Maureen Swajian, was killed. Prior to trial the plaintiff moved in limine to preclude all evidence of Mrs. Swajian's use or nonuse of an available seat belt. Recognizing that the motion rested on an unsettled issue of Rhode Island law, Senior Judge Raymond J. Pettine certified the following question to this court pursuant to Rule 6 of the Supreme Court Rules of Appellate Procedure:

"Whether under Rhode Island law the use or nonuse of an available seatbelt and/or shoulder harness restraint system should be considered by the fact finder in a civil action for damages for injuries sustained in a motor vehicle accident?"

Because this action has yet to proceed to trial, we shall limit ourselves to the undisputed facts set forth in the certification order. In early June of 1986 Maureen Swajian was traveling alone along Route 95 North in her 1986 GMC Jimmy 4 by 4 (Jimmy). General Motors Corporation (GMC or General Motors) is the manufacturer of this vehicle. While proceeding at a rate of speed between fifty and sixty miles per hour, the Jimmy apparently proceeded to roll over several times. Mrs. Swajian was thrown from the vehicle. She died shortly thereafter from injuries sustained in the accident.

The plaintiff filed suit against GMC in the Federal District Court under the Wrongful Death Act, G.L.1956 (1985 Reenactment) chapter 7 of title 10, alleging that one or more defective conditions in the Jimmy initiated the roll-over sequence. The defendant asserts, inter alia, that the accident was caused by Mrs. Swajian's inappropriate steering overcorrection. Of significance to this court is GMC's contention that Mrs. Swajian failed to wear an available seat belt, thereby exacerbating her injuries. This line of affirmative defense is oftentimes referred to as the "seatbelt" or "safety-belt defense." [1] The plaintiff contests the factual assertion that Mrs. Swajian was not wearing her safety belt at the time of the accident and further seeks to preclude any reference at trial to her safety-belt usage or nonusage. Rather than predict Rhode Island law on this issue, Judge Pettine seeks the opinion of the justices of this court on the availability of the safety-belt defense.

---

**1.** Throughout this opinion the term "safety belt" will replace the somewhat misleading concept "seat belt." This term more appropriately encompasses any lap-belt and/or shoulder-harness restraint system.

The law on the admissibility of safety-belt evidence has encountered mixed judicial and legislative reception. *Compare Waterson v. General Motors Corp.*, 111 N.J. 238, 544 A.2d 357 (1988) (admissible) *with Welsh v. Anderson*, 228 Neb. 79, 421 N.W.2d 426 (1988) (inadmissible). *See* 7 *Am. Law Prod. Liab. 3d* § 95:11 at 21 (1988). During its infancy, the safety-belt defense was overwhelmingly rejected by court decision and legislative enactment mainly as a variant of contributory negligence. *See* Westenberg, *Buckle Up or Pay: The Emerging Safety Belt Defense*, 20 Suffolk U.L. Rev. 867, 870–75 (1986) (discussing jurisdictional treatment of defense from 1966 through 1975). With the advent of comparative-negligence principles, however, a ripple of judicial and legislative approval of this defense has spread throughout a number of jurisdictions, particularly in products liability "crashworthiness" cases. *See Daly v. General Motors Corp.*, 20 Cal.3d 725, 575 P.2d 1162, 144 Cal.Rptr. 380 (1978); *Dahl v. BMW*, 304 Or. 558, 748 P.2d 77 (1987); *see also* Westenberg, 20 Suffolk U.L. Rev. at 875–89. Nevertheless, a majority of states which have addressed the issue continue to reject the safety-belt defense. 20 Suffolk U.L. Rev. App. B at 923–33.

A plethora of cases and scholarly articles have explored in depth the various reasons given by courts for either admitting or barring safety-belt evidence in civil actions for damages. *See Spier v. Barker*, 35 N.Y.2d 444, 323 N.E.2d 164, 363 N.Y.S.2d 916 (1974); *Miller v. Miller*, 273 N.C. 228, 160 S.E.2d 65 (1968); *Amend v. Bell*, 89 Wash. 2d 124, 570 P.2d 138 (1977); *Bentzler v. Braun*, 34 Wis. 2d 362, 149 N.W.2d 626 (1967); *see also* 7 *Am. Law Prod. Liab. 3d* §§ 95:11–12 at 21–23; Ackerman, *The Seat Belt Defense Reconsidered: A Return to Accountability in Tort Law?*, 16 N.M.L. Rev. 221 (1986); Note, *The Seat Belt Defense: Must a Reasonable Man Wear a Seat Belt?*, 50 Mo. L. Rev. 968 (1985). Consequently, for purposes of answering the question certified to this court, we need only highlight these conflicting rationales.

There is a sharp split of authority amongst courts that have considered the admissibility of safety-belt evidence. Courts barring the use of such evidence under any theory of civil litigation have generally relied on one or more of the following reasons: there is no duty to mitigate damages *prior* to sustaining an injury, *Clarkson v. Wright*, 108 Ill.2d 129, 90 Ill.Dec. 950, 483 N.E.2d 268 (1985); the defense fails to conform with traditional elements of assumption of risk, *Kopischke v. First Continental Corp.*, 187 Mont. 471, 610 P.2d 668 (1980); a defendant must take plaintiffs as he or she finds them, *Fischer v. Moore*, 183 Colo. 392, 517 P.2d 458 (1973); the matter involves considerations properly left to the Legislature, *Britton v. Doehring*, 286 Ala. 498, 242 So.2d 666 (1970); the efficacy of safety belts in preventing injuries is questionable; *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48 (Okla.1976); few motorists actually utilize safety belts, *Miller v. Miller*, 273 N.C. 228, 160 S.E.2d 65 (1968); the evidence leads to excessive speculation by experts and protracted litigation, *Amend v. Bell*, 89 Wash. 2d 124, 570 P.2d 138 (1977); and absent a statutory standard of care, most courts refuse to find a common-law duty to wear a safety belt, *Schmitzer v. Misener–Bennett Ford, Inc.*, 135 Mich. App. 350, 354 N.W.2d 336 (1984). The plaintiff in the instant case advances many of these arguments in support of precluding all evidence relating to Mrs. Swajian's safety-belt usage or nonusage.

Other courts have admitted safety-belt evidence for purposes of determining whether the plaintiff breached his or her duty to mitigate damages under the so-called doctrine of avoidable consequences. *See Hutchins v. Schwartz*, 724 P.2d 1194 (Alaska 1986); *Spier v. Barker*, 35 N.Y.2d 444, 323 N.E.2d 164, 363 N.Y.S.2d 916 (1974). Courts have also allowed this evidence on the issues of contributory or comparative fault. *Dahl v. BMW*, 304 Or. 558, 748 P.2d 77 (1987); *Bentzler v. Braun*, 34 Wis. 2d 362, 149 N.W.2d 626 (1967). In addition, the safety-belt defense has been employed to show that the plaintiff misused the product or voluntarily and knowingly assumed the risk of injury resulting

from the failure to wear a safety belt. *See Melia v. Ford Motor Co.,* 534 F.2d 795 (8th Cir.1976); *General Motors Corp. v. Walden,* 406 F.2d 606 (10th Cir.1969). Arguing for admission of safety-belt evidence, GMC strenuously asserts these contentions in its brief.

Appellate court approval of the safety-belt defense appears to be aimed at reducing the human carnage on public highways through promoting increased safety-belt use. Westenberg, 20 Suffolk U.L. Rev. at 881. In every jurisdiction allowing this defense, however, the defendant must demonstrate by competent evidence that a causal relationship exists between the injuries sustained in the accident and the plaintiff's failure to wear an available safety belt. 7 *Am. Law Prod. Liab. 3d* § 95:11 at 22.

Before setting forth the specific arguments raised by each party, a compendium of the current status of negligence and strict liability principles in Rhode Island is necessary. In 1971 the Legislature abolished the all-or-nothing bar to recovery under contributory negligence and adopted a "pure" comparative negligence approach. P.L.1971, ch. 206, § 1 (codified at G.L.1956 (1985 Reenactment) § 9–20–4).[2] That same year this court adopted the theory of strict liability promulgated in Restatement (Second) *Torts* § 402A (1965). *See Ritter v. The Narragansett Electric Co.,* 109 R.I. 176, 283 A.2d 255 (1971). We later held in *Fiske v. MacGregor, Div. of Brunswick,* 464 A.2d 719 (R.I.1983), that comparative-negligence principles apply to claims brought under strict liability and implied warranty theories. *Id.* at 726–29. In *Fiske* we further alluded to the availability of assumption of risk in products liability actions. *Id.* at 729. The plaintiff in the instant case alleges the standard products liability claims of strict liability in tort, breach of warranty, and negligence. With this background in mind, we turn to the relative contentions of the parties.

In the case at bar, both counsel for defendant and counsel for plaintiff have argued with equally effective vim and vigor their respective positions. The defendant argues that under the strict liability principles of Restatement (Second) *Torts* § 402A and *Ritter* the factfinder ought to consider the presence of safety equipment in a vehicle and the plaintiff's failure to use that equipment in order to determine whether the product was defective and unreasonably dangerous as a whole. General Motors also contends that, even assuming the initial roll-over sequence was caused by a defect in the vehicle, Mrs. Swajian's failure to buckle up proximately caused the "enhanced injuries" suffered when her body was propelled from the Jimmy. The defendant further claims that a jury is entitled to consider a plaintiff's failure to wear a safety belt in determining whether that plaintiff breached his or her duty to exercise reasonable care in the circumstances preceding the accident.

The plaintiff alleges that a defective right-rear axle initiated the roll-over sequence. Relying on a frequently posited argument against admitting safety-belt evidence, plaintiff asserts that a culpable defendant should not profit from an injured party's failure to anticipate such an unforeseeable product defect. There is no duty to wear safety belts in Rhode Island, plaintiff argues, and the imposition of such a duty is a matter of public policy properly left to the Legislature. The plaintiff then directs our attention to the fact that the General Assembly has repeatedly rejected all efforts to enact a mandatory safety-belt law for adults. The inference to be drawn, of course, is that the Legislature has affirmatively refused to impose a statutory duty to wear safety belts. It is this final argument that directs us to the specific statutes which mandate safety-belt use.

The Rhode Island General Assembly has historically required that certain classes of drivers wear safety belts. Since 1962, drivers of public-service vehicles in this state have been required by statute to use safety belts. G.L.1956 (1982 Reenactment) § 31–23–41, as amended by P.L.1986, ch.

---

**2.** Under this theory of comparative negligence, a plaintiff may recover damages in proportion to his or her degree of fault, provided that the plaintiff is not entirely at fault.

424, § 1. The Legislature has similarly ordered student drivers to buckle up since 1985. G.L.1956 (1982 Reenactment) § 31–10–45, as enacted by P.L.1985, ch. 422, § 1.

Rhode Island's child-passenger-restraint statute, enacted in 1980, originally required every person transporting a child of three years of age or younger by motor vehicle to secure him or her in a properly approved child-passenger-restraint system. P.L. 1980, ch. 61, § 1. That act currently mandates, in addition to the above-enunciated requirement, that every child between the ages of three and twelve years be secured in a child-passenger-restraint system or safety belt.[3] G.L.1956 (1982 Reenactment) § 31–22–22, as amended by P.L.1987, ch. 331, § 1. The statute also contains the following limiting provision:

> "[I]n no event shall failure to wear a child passenger restraint system or regular seat belt be considered as contributory or comparative negligence, nor such failure to wear said child passenger restraint system, regular seat belt or shoulder harness be admissible as evidence in the trial of any civil action."

There is no mandatory safety-belt law for adults in this jurisdiction, and repeated attempts to pass such an act have been rejected by both the House and the Senate. *See* House and Senate Bill Nos. 88–H–9110, 86–S–2727, 86–H–8221, 86–H–7265, 86–S–2048, 86–S–2016, 85–S–851, 85–H–5595, 84–S–0268, 84–H–7392 (available from Rhode Island State Library). Thus, persons over twelve years of age in this jurisdiction are under no statutory duty to wear safety belts.

The question certified to this court is unique in the sense that it asks whether a jury in this state may *consider*, for any reason, evidence of the use or nonuse of an available safety belt. The very breadth of this query might lead us to respond that any answer given is dependent upon the particular circumstances of each case. We believe, however, that implicit in Judge Pet-

tine's question is the determination of whether there is a duty under Rhode Island common law to wear a safety belt when traveling in a motor vehicle on public roads.

■ We are unable to agree with defendant's viewpoint that the issue presented herein is "whether the fact finder can consider the plaintiff's failure to wear the available [safety] belt in determining whether the plaintiff breached her duty to exercise reasonable care for her own safety." Likewise, we disagree with the position adopted by the Oregon Supreme Court that "whether the plaintiff's actions in not buckling up were reasonable in light of the foreseeability of an accident is, absent exceptional circumstances, a question for the trier of fact to determine." *Dahl v. BMW,* 304 Or. at 566, 748 P.2d at 81. In the seminal case of *Miller v. Miller,* 273 N.C. 228, 160 S.E.2d 65 (1968), decided over twenty years ago, the North Carolina Supreme Court considered application of the reasonably prudent person standard in this context and concluded:

> "Since the facts and circumstances preceding any accident will vary, so must conduct constituting due care. Under what circumstances would a plaintiff's failure to buckle his seat belt constitute negligence? If a motorist begins his journey without buckling his belt, ordinarily he will not have time to fasten it when the danger of accident becomes apparent; so the duty to 'buckle up'—if any—must have existed prior to the injury. Furthermore, it must be remembered that until one has, or should have, notice of another's negligence, he is not required to anticipate it. On the contrary, he is entitled to assume that others will use due care for his safety and their own.
>
> "* * *
>
> "[T]here are no standards by which it can be said that the use of seat belts is required for one trip and not another.

---

**3.** At the time of the writing of this opinion, there is pending a bill, H–6690, Sub A, which would raise the mandatory age for buckling up children in the child-passenger-restraint law from twelve years to sixteen years. This bill has passed the House and is currently under consideration by the Senate Judiciary Committee.

Without a meaningful standard for judgment, the triers of fact cannot find the failure to fasten a seat belt to be negligence. * * *

" 'It is possible for reasonable men to analyze logically the variables presented by the issues of lookout and control, but it is extremely difficult to analyze the variables presented in failing to buckle a seat belt upon entering an automobile for normal, everyday driving. To ask the jury to do so is to invite verdicts on prejudice and sympathy contrary to the law. It is an open invitation to unnecessary conflicts in result and tends to degrade the law by reducing it to a game of chance.

" ' * * * Everything does not have to be grey and a matter of balancing; some questions, such as stop signs and red lights, lend themselves to clear black and white determinations * * * [T]he question of the use of seat belts is best resolved by a fixed standard. An occupant of a car involved in normal, everyday driving should either be required to wear a seat belt or he should not.' " *Id.* at 234–35, 160 S.E.2d at 70–71 (quoting *Lipscomb v. Diamiani*, 226 A.2d 914, 917–18 (Del. Super. Ct.1967)).

The question before this court in the present case is whether a duty exists at common law in this jurisdiction to wear a safety belt in ordinary vehicular travel. We hold that no such duty exists in Rhode Island.

■ Comparative negligence, like negligence, is premised upon a legally imposed duty or standard of care to which an actor must adhere. *Amend v. Bell*, 89 Wash. 2d 124, 132, 570 P.2d 138, 143 (1977). It is axiomatic to tort law that this duty goes to the very existence of liability. *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928). One cannot logically be held liable for breach of a nonexistent duty. Having found no statutory or common-law duty to wear a safety belt, there can be no comparative negligence based upon plaintiff's failure to buckle up. General Motors has failed to clear the first hurdle of the negligence calculus, and therefore, all evidence relating to safety-belt use or nonuse

is irrelevant and inadmissable on the issues of comparative fault and proximate cause.

Despite the perceived trend to allow safety-belt evidence on the issue of damages, the defense simply fails to conform with traditional elements of avoidable consequences. The doctrine of avoidable consequences requires a plaintiff to take all reasonable steps to mitigate damages *after* he or she has been tortiously injured. The classic example is, of course, the failure or refusal of a victim to seek or submit to medical attention after wrongfully being harmed by a defendant. Although it is arguably foreseeable that one might be involved in an automobile accident, we refuse to impose a duty to mitigate damages prior to tortious impact based upon such a fortuitous possibility. This court aligns itself with the majority of jurisdictions in holding that a plaintiff owes no duty to anticipate a defendant's negligence and to minimize damages by buckling up *before* the tortious impact occurs. *See Lamarque v. Masse*, 76 R.I. 382, 387, 71 A.2d 100, 102–03 (1950). The defendant in reality advances a new defensive doctrine, namely, anticipatory avoidable consequences. We decline GMC's invitation to adopt such a defense.

■ This court similarly cannot agree with defendant's contention that under *Fiske v. MacGregor, Div. of Brunswick*, 464 A.2d 719 (R.I.1983), safety-belt evidence is properly admitted in products liability actions to show assumption of risk. A plaintiff who assumes the risk of injury freely chooses to expose him or herself to a known unreasonable risk. This affirmative defense requires that a plaintiff have subjective knowledge of the existence of the specfic condition creating the risk. We would be hard-pressed to find on the limited facts before us that Mrs. Swajian proceeded to drive a vehicle which she knew to have an allegedly defective and unreasonably dangerous rear axle. Very few courts have found assumption of risk persuasive in considering the admissibility of safety-belt evidence. It is the opinion of this court that the failure to buckle up does not

constitute a self-willed and knowing exposure to the specific risk of sustaining enhanced injuries originally set in motion by another person's negligence or undetectable product defect.

We recognize the safety-belt defense for what it is worth—a manifestation of public policy. This court believes that any attempt at reducing highway fatalities through promoting the increased use of safety belts is best accomplished by legislative action. Recent studies indicate that the vast majority of Rhode Islanders refuse to buckle up. *E.g.*, Rockett, *An Observational Study of Safety Belt Use: Rhode Island, 1987* (Final Report for the Governor's Office on Highway Safety, Rhode Island Department of Transportation). If we were to impose a duty to wear safety belts, in essence this court would be condemning most motor-vehicle occupants as negligent. Such a determination, if desirable, is properly left to the Legislature. Arguably, in light of the child-passenger-restraint law—which precludes all safety-belt evidence in civil trials—the General Assembly has already indicated its unwillingness to allow juries to consider this evidence. Moreover, should recent safety-belt-use studies prove reliable, it could be argued that manufacturers should design vehicles in a manner safe for those who foreseeably will not wear safety belts. The above discussion smacks of public-policy considerations more appropriately addressed by the Legislature. In any event, we are doubtful that a contrary holding would encourage increased use of safety belts.

For the reasons enunciated above, we answer the question propounded by the Federal District Court in the negative.

KELLEHER, J., did not participate.