DECISION
Before this Court are three separate motions — one Motion in Limine, one Motion to Compel, and one Motion for Leave to File a Third Amended Complaint in the wrongful death action. Plaintiff Naysha Berrios ("Plaintiff") in her individual capacity and in her capacity as the Administratix of her daughter, Cassandra Berrios's estate, seeks damages for her own injuries, as well as damages for the wrongful death of her minor daughter, Cassandra, from First Student, Inc. ("First Student") and Jevic Transportation Inc. ("Jevic") (collectively, "Defendants").
 I Facts and Travel
The instant matter arose from an automobile accident that occurred on Route I-95 North in the morning of September 5, 2001. According to police reports and deposition testimony, prior to the accident, an 18 wheel, tractor trailer owned and operated by Jevic Transportation Inc. was parked in the breakdown lane along I-95 North. Defendant Ilba Berrios was the driver of First Student, Inc. school bus and a First Student employee. *Page 2 
Also on the First Student school bus were Naysha Berrios, and her infant daughter Cassandra Berrios. Naysha Berrios was the bus monitor and a First Student employee. According to police reports and deposition testimony, the infant Cassandra was improperly secured in a children's car seat that was fastened with a lap seatbelt. The school bus was traveling in the right lane of I-95 North, crossed into the breakdown lane and struck the stationary Jevic truck which was operated by Craig Benfield. Craig Benfield's wife, Tina Benfield, was also an occupant in the cab of the Jevic truck at the time of the accident. At this time, Qualcomm Global Positioning Systems and Electronic Control Modules were both standard equipment on Jevic tractor trailers. The infant, Cassandra Berrios, was severely injured and subsequently died. Ilba Berrios and Naysha Berrios were both injured but survived the accident. Naysha Berrios, individually and as Administratix of the Estate of Cassandra Berrios subsequently filed this law suit. Thereafter, Defendants Jevic Transportation and First Student filed Cross-Claims against each other. Defendant Ilba Berrios filed a Cross-Claim against Jevic alleging her injuries were the result of Jevic's negligence. United States Fidelity and Guaranty Company and Travelers Group are Jevic's insurers.
Discovery in the instant matter has been ongoing for six years. Extensive discovery has taken place. To date more than twenty-five depositions have been taken including 30(b)(6) depositions of both Jevic and First Student, Naysha and Ilba Berrios, multiple policemen, numerous firefighter/emergency medical technicians and several witnesses to the accident. On May 20, 2008, Jevic filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. As such, provisions of an automatic stay were triggered and the other parties were precluded from advancing this *Page 3 
case relative to Jevic. The stay was eventually lifted on July 16, 2010. First Student replaced its counsel around May 2010. First Student's prior counsel conducted a deposition of Jevic's 30(b)(6) designee, James Daulerio.
On August 27, 2010, Defendant First Student, moved for a Protective Order with respect to Plaintiff's Rule 30(b)(6) Notice of Deposition directed to First Student. On September 2, 2010, Plaintiff responded by filing a Motion to Compel Discovery Responses from Defendant First Student, Inc. After a hearing thereon, and in consideration thereof, on November 17, 2010, this Court entered an Order: (1) denying First Student's Motion for Protective Order; and (2) granting Plaintiff's Motion to Compel Discovery Responses from Defendant, First Student Inc. Although Plaintiff also submitted a Motion to Default First Student for Failure to Comply with Production of Documents, this Court need not currently decide that motion.
Additionally, Defendant First Student, moved for the Issuance of Commissions Authorizing Deposition Subpoenas, allowing counsel for First Student through appropriate process, in the court of New Jersey, to obtain deposition subpoenas directed at Nikketta Lowe and James Daulerio for testimony relevant to the subject matter of this case and their knowledge of Defendant Jevic Transportation. This matter is still pending before the Court.
 II Plaintiff's Motion in Limine
The Plaintiff seeks to bar Defendants First Student and Jevic from introducing any testimony or evidence that Naysha Berrios was comparatively negligent and that her award should be correspondingly reduced, because she allegedly did not properly secure her daughter Cassandra in a child safety seat. Plaintiff moves in limine to exclude any *Page 4 
and all evidence that Defendants First Student and/or Jevic may proffer pertaining to the alleged use, non-use, or misuse of the "child restraint system." The Defendants object, stating that Plaintiff's motion seeks to bar any and all evidence related to the infant car seat that was involved in the matter, and that there is no support for such an argument. The Defendants further contend that Plaintiff seeks an impermissibly broad interpretation of G.L. 1956 § 31-22-22 and Rhode Island case law.
It is well-established that the interpretation of a statute is a question of law. See Palazzolo v. State ex rel.Tavares, 746 A.2d 707, 711 (R.I. 2000). Where the language of a statute "is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent." Retirement Bd. of Employees'Retirement System of State v. DiPrete,845 A.2d 270, 297 (R.I. 2004) (internal quotations omitted). Accordingly, when "a statutory provision is unambiguous, there is no room for statutory construction and [this Court] must apply the statute as written." Id.; see also State v.Santos, 870 A.2d 1029, 1032 (R.I. 2005) ("The plain statutory language is the best indicator of legislative intent.").
Furthermore, under our canons of statutory interpretation
 "[t]he construction of legislative enactments is a matter reserved for the courts, . . . and, as final arbiter on questions of construction, it is this court's responsibility in interpreting a legislative enactment to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." State v. Greenberg, 951 A.2d 481, 489 (R.I. 2008) (quoting Brennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987)).
To accomplish this task, the Court must examine "`the language, nature, and object of the statute[,]' to glean the intent of the Legislature." Id. (quoting State v. Pelz, *Page 5 765 A.2d 824, 829-30 (R.I. 2001)). However, when construing statutes, this Court will not interpret statutory schemes in such a manner as to reach an absurd result. See Long v. Dell,Inc., 984 A.2d 1074, 1081 (R.I. 2009).
Section 31-22-22(a)(2) of the Rhode Island General Laws provides that in "no event shall the failure to wear a child restraint system or safety belt be considered as contributory or comparative negligence, nor shall the failure to wear a child restraint system, seat belt and/or shoulder harness be admissible as evidence in the trial of any civil action." Thus, while § 31-22-22(a)(1) requires that children under the age of eight be placed in a child restraint system, § 31-22-22(a)(2) excludes the use of evidence regarding the failure to use a child restraint system in the trial of any civil action. Furthermore, our Supreme Court in Swajian v. GeneralMotors Corp., 559 A.2d 1041, 1041 (R.I. 1989), the Court stated that "all evidence relating to safety-belt use or nonuse is irrelevant and inadmissible" at trial. The Defendants maintain that in the current case, § 31-22-22 should be interpreted to apply only to preclude evidence of non-use of a child restraint system and should not extend to misuse of a child restraint system.[1] *Page 6 
Evidence of an alleged misuse of a child restraint system, a child safety seat, and other such devices is inadmissible. SeeSwajian, 559 A.2d at 1041. Indeed, the distinction between nonuse and misuse that the Defendants purport to make could lead to absurd results. See id. For instance, evidence of a child who is crawling freely in the interior of an automobile unrestrained would be inadmissible under § 31-22-22, while evidence of a child placed in a safety seat with a loose buckle would be admissible. See id. Furthermore, numerous states have interpreted the language of similarly worded statutes to encompass both non-use and misuse of child restraints. SeeChaney v. Young, 468 S.E. 2d 837 (N.C. Ap. 1996) (holding that the language of the seat-belt statute precluded evidence of the misuse of a seat belt when two individuals were in one seat);see also Watkins v. Hartsock, 783 P.2d 1293 (Kan. 1989) (holding that the language of the seat belt statute excluded evidence that a child restraint system was allegedly misused in a forward facing position). Accordingly, the arguments of both First Student and Jevic fail.
The Defendants further contend that § 31-22-22 is unconstitutional on procedural due process grounds. In Minnesota, the constitutionality of a similar statute that precluded the admission of seatbelt nonuse on procedural due process grounds was upheld.Cressy v. Grassman, 536 NW2d 39 (Minn. 1995). There the court noted that appellants' right to present a defense was not at risk.Id. at 43. Although the defendants in Cressy were unable to reduce awards to the extent of damages that allegedly were attributable to seat-belt nonuse, the defendants still were allowed to present evidence of *Page 7 
plaintiff's comparative fault, if any, in causing the accident. Id. Here, the Court holds that § 31-22-22 does not violate Defendants procedural due process rights because Defendants still may reduce damages to the extent of Plaintiff's comparable fault in causing the accident. See id.
The Defendants further contend that the statute violates the separation of powers mandated by Article 3 because it removes from the Court's discretion the determination of the admissibility of otherwise relevant evidence. However, the evidence which Defendants proffer is inadmissible precisely because it has been deemedirrelevant on any material issue in this case. SeeSwajian, 559 A.2d at 1041.
Defendants contend that the safety seat evidence is admissible because R.I. Gen. Law § 31-22-22(h) cannot be retroactively applied to the Plaintiffs pending lawsuit. Defendants' argument lacks merit. It is important to note that the 2002 public law which enacted § 31-22-22(h) did not state that it applied to all violations occurring upon or after that date. P.L. 2002, ch, 121 § 2.[2] The public law which added subsection (h) to the statute in 2002 was a procedural rule of law that applied prospectively to all cases which were either pending at the time of its enactment or were filed after its enactment. In the current case, Plaintiff's case is a prospective application of the statute as it was amended in 2002. Such amendments are appliedprospectively when applied to pending cases. The 2002 amendment to subsection (h) when applied to a pending case like the one before the court is applied prospectively, not retrospectively, because the pending case was filed after the amendment's effective date of June 14, 2002. See State v. Hillman,125 A.2d 94, 96 (R.I. 1956) *Page 8 
(holding that the application of a new statutory rule of evidence to cases that were tried after its enactment would be prospective, rather than retrospective). Therefore, P.L. ch 121 which added Subsection (h) to R.I. Gen Law § 33-22-22 must be applied prospectively to the current pending case filed in 2004. Accordingly, for the reasons stated above, this Court grants Plaintiff's Motion in Limine to exclude any and all evidence pertaining to the alleged use, non-use, or misuse of the "child restraint system."
 III Plaintiff's Motion for Leave To File Third AmendedComplaint
The Plaintiff moves to amend her complaint in accordance with Super. R. Civ. P. 15 to join United States Fidelity and Guaranty Company and Travelers Group as party defendants. Defendant Jevic objects.
On June 23, 2010, the Bankruptcy Court signed an Order approving a Stipulation reached by and between Jevic and Plaintiff to modify an automatic stay from a Chapter 11 of Title 11 of the United States Code filing (Docket No. 08-11008-BLS) for the limited purposes of allowing the Plaintiff to proceed with and prosecute to judgment or settlement of this suit against Jevic. Thereafter, on July 16, 2010, an additional Order was entered in the Bankruptcy Court lifting the automatic stay as to all parties relative to this action.
Pursuant to G.L. 1956 § 27-7-2 an injured party is prohibited from joining an insurer as a defendant except in four limited circumstances. An insurer may be added as a party if: (1) the officer serving any process against the insured shall return that process "non est inventus"; (2) if the insured dies before the suit has been brought and probate proceedings have not been initiated; (3) a suit is pending against an insured in his or her *Page 9 
own name, and the insured dies prior to judgment; and (4) a nonresident has been involved in an automobile accident in Rhode Island as an operator or owner, and died before suit has been brought. Id. Where none of these four conditions exist, direct claims against insurers are prohibited. See Rivers v.American Commerce Insurance Co., 836 A.2d 200, 205 (R.I. 2003) (holding the accident victim could not successfully file a complaint against the liability insurer when she was barred from serving the tort-feasor due to the statute of limitations). In the instant matter, however, Plaintiff cannot satisfy any of the four exceptions set forth in the statute.
Section § 27-7-2.4 permits an injured party to file a direct action against a liability insurer when the alleged tortfeasor files for bankruptcy; Jevic is still an active party to the litigation and remains available as a defendant, regardless of its bankruptcy status. See Giroux v. Purington Bldg. Sys., Inc.,670 A.2d 1227, 1229 (R.I. 1996).[3] While Jevic may be in bankruptcy, due to the modification of the stay, it remains a viable defendant upon which judgment can be imposed. Seeid. Accordingly, for the reasons stated above, this Court denies Plaintiff's motion for leave to file third amended complaint. *Page 10 
 IV Defendant First Student's Motion To Compel Discovery from Jevic
Since 2004, First Student has propounded numerous discovery requests to Jevic. Prior to Jevic filing for bankruptcy, First Student propounded discovery that required Jevic to respond before the bankruptcy stay commenced on May 20, 2008. Following the lifting of the automatic stay imposed by the Bankruptcy Court, on July 16, 2010, all claims in this litigation were allowed to proceed against Jevic. First Student has since sought relevant discovery from Jevic.
Defendant First Student has filed a motion to compel discovery responses from Defendant Jevic. Specifically, First Student seeks testimony and documents concerning the following: (1) supplemental responses and corresponding production of documents to previously deficient responses; (2) responses and corresponding documents to outstanding requests for production; (3) responses to outstanding interrogatories that were due prior to entry of the bankruptcy stay; (4) an additional 30(b)(6) witness who can testify as to matters about which Jevic's previous designee had no knowledge; (5) access to the Jevic document repository located in a warehouse in New Jersey; and (6) an affidavit attesting to the search of the warehouse, the efforts expended to do so, and a definitive statement as to whether relevant documents exist in the warehouse.
Defendant Jevic filed objections to First Student's motion to compel, responding that Jevic has fully complied with all discovery requests propounded by First Student (excluding the February 21, 2008 discovery request) and maintains that First Student's Motion to Compel is an attempt to re-open discovery in this case. In addition, Jevic contends that many of the documents that First Student is seeking simply do not exist. *Page 11 
Rule 34 provides for "the production of documents and things." Super. R. Civ. P. Rule 34. A discovering party may move for an order compelling discovery if a party fails to answer discovery submitted under Rule 34. See R.I. Super. R. Civ. P. 34. In granting or denying discovery orders, a justice of the Superior Court has broad discretion. See Corvese v. Medco Containment Servs.,687 A.2d at 881 (denying corporation's motion for reconsideration of order compelling production of discovery documents alleged to be business sensitive, proprietary, and confidential). The discovery process affords Rhode Island litigants the ability to obtain information "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Rule 26(b)(1); see, e.g., Hodge v. OsteopathicGen. Hosp. of R.I.,105 R.I. 3, 9-10, 249 A.2d 81, 85 (1969) (ordering party to produce materials that are "relevant" and "readily available"). Rule 34 requires that a party produce discoverable documents in its "possession, custody or control." R.I. Super. R. Civ. P. 34(a). "Control" however does not include making a search of all potential sources which might be able to provide documents. See Wiva v. Royal Dutch PetroleumCo., 392 F.3d 812, 821 (5th Cir. 2004) (denying plaintiff's motion to produce documents relating to defendant's oil exploration and production activities in Nigeria).
In DeCarvalho v. Gonsalves,106 R.I. 620, 262 A.2d 630 (1970), the Court set forth some guidelines for other courts to consider when reviewing discovery requests. The Court stated "[a]lthough we believe that the new Rules of Civil Procedure of the Superior Court with their pretrial discovery techniques have furnished a litigant with a fishing license . . . the litigant may not cast his line until he [sic] has shown the requisite materiality of his request to produce." Id., 106 R.I. at 627, 262 A.2d 634 (citing 1 Kent, *Page 12 Rhode Island Civil Practice, § 34.3, at 281). Thus, the burden of demonstrating requisite materiality under Rule 34 rests on the party seeking production. Id.
Accordingly, this Court must determine the sufficiency of First Student's request for production of Jevic's witnesses and documentation pursuant to Rule 34, and whether such discovery is within Jevic's control. See 262 A.2d at 630. Furthermore, the Court must determine if First Student sufficiently described the request for production and the burden this request imposes upon Jevic. See id.
This Court will review each of First Student's requests seriatim:
 A First Student's Requests for Production to Jevic, dated June 24, 2004.
On June 24, 2004, First Student propounded various requests for production. Several of those requests are at issue here. In response to those requests, Jevic responded that such requests were overly broad, unduly burdensome and not reasonably calculated to lead to discovery.
 1 Request No. 3
Request No. 3 seeks: "Any all statements given by a party witness." This Court must evaluate the sufficiency of the description provided in this request for production. SeeDeCarvalho, 262 A.2d at 630. Request No. 3, made on behalf of First Student, was simply a blanket request for any and all statements given by a party or witness. Factually, the production request in the present case is certainly unduly broad and duplicative. See id. Jevic already produced every relevant document in its possession to First Student prior to its bankruptcy. *Page 13 
To require Jevic to produce additional documentation now after it has filed for bankruptcy based solely on such a vague request does not comport with the principles of Rule 26. The Court denies the motion to compel Request No. 3.
 2 Request Nos. 6, 8 and 9
These requests seek various and sundry pieces of information regarding the Jevic vehicle. While Rule 34 requires Jevic to produce any and all documents in its possession, custody, orcontrol, it does not require Jevic to search all other potential sources. See Wiva,392 F.3d at 821 (emphasis added). First Student failed to demonstrate that the alleged documents exist in Jevic's custody or control. Consequently, the Court denies the motion to compel Request No. 6, 8, and 9.
 3 Request No. 13
Request No. 13 seeks a copy of any disciplinary action begun or taken against Craig G. Benfield, as well as any company investigation of the incident that may have taken place. Jevic responded that Jevic possesses no such documents. Jevic's response mirrors the initial Response to No. 13, particularly noting that there was no disciplinary action taken against Benfield.
First Student has not shown that responsive documents must exist in Jevic's custody or control simply because Jevic did not explicitly provide information regarding the scope of search conducted. See id. The Court denies the motion to compel to Request No. 13. *Page 14 
 B First Student's Request for Production of Documents to Jevic Dated August 29, 2006
On August 29, 2006, First Student propounded various requests for production. Several of those requests are at issue here. In response to those requests, Jevic responded that such requests were overly broad, unduly burdensome and not reasonably calculated to lead to discovery.
 1 Request No. 4
Request No. 4 seeks a copy of the written document permitting operator Craig Benfield to have his wife with him in the vehicle at the time and place that the subject accident occurred. Jevic contends it has no documents responsive to Request No. 4. First Student has not shown that responsive documents must exist in Jevic's custody or control. See id. The Court denies the motion to compel to Request No. 4.
 2 Request Nos. 5 and 7
Request 5 seeks all G.P.S. satellite records or any other tracking, spotting or information electronics that allowed Jevic to monitor its trucks or to learn about the geographic position and time spent in each such position for the forty-eight hour period up to and including the time of the subject accident. Request No. 7 seeks all Qualcomm satellite, G.P.S., or by other designation, records from the Jevic Transportation Vehicle which identify information about the operation, position, time elapsed and all other available information for the Jevic Transportation unit in question for the forty-eight hour period up to and including the time of the accident. Jevic responds that it has no documents responsive to those requests. *Page 15 
First Student has not shown that responsive documents must exist in Jevic's custody or control. The Court denies the motion to compel to Requests Nos. 5 and 7.
 3 Request No. 13
Request No. 13 seeks production of an inventory or other list of all safety and warning equipment or devices that operators have available on their vehicles at the time of any accidents that would warn other motorists. Jevic responds that it has no documents responsive to Request No. 13.
The Court finds that First Student has not shown that such responsive documents actually exist in Jevic's custody or control.See id. The Court denies the motion to compel to Request No. 13.
 C First Student's Request for Production of Documents to Jevic, dated March 27, 2007 1 Request No. 1
Request No. 1 seeks the statement of Craig Benfield given to Mr. Daulerio after the accident as part of the standard procedure to investigate all accidents. Jevic responds that Jevic has no documents responsive to Request No. 1. The Court finds that First Student has not shown that such documents must exist in Jevic's custody or control. The Court denies the motion to compel to Request No. 1.
 2 Request No. 4
Request No. 4 seeks a copy of all cellular telephone records of Mrs. Benfield or any other document that purports to show when, how long, and to whom, each of her cell phone calls were made, or received, from 9:00 a.m. on Tuesday, September 4, 2001 up to and including 11:30 p.m. on Wednesday, September 5, 2001. Jevic responds that Request *Page 16 
No. 4 was outside the scope of discovery, overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Jevic asserts that Mrs. Benfield is not a party to this litigation and that no such documents responsive to Request 4 are in its control. The Court denies the motion to compel to Request 4.
 D First Student's Request for Production of Documents and Interrogatories to Jevic Dated February 21, 2008
Jevic has yet to respond to Interrogatories and Requests for Production served on February 21, 2008. Jevic requested an extension within which to respond to this discovery request to which First Student agreed. Jevic has currently agreed to a 30 day order and denies that it has waived its objections on this issue. While First Student did agree to an extension of the discovery, Jevic has yet to produce any responses to the information sought in the April 2008 requests. Adequate time was provided in which Jevic could comply with these requests.
The Court finds that pursuant to Rule 33, Jevic has waived any objections to these requests. See Super. R. Civ. P. Rule 33. The Court grants the motion to compel Jevic to respond to these requests.
 E First Student's Requests to Depose Certain JevicWitnesses
At minimum, a party can be compelled to provide a potential witness's last known address. See Wills v. Amerada HessCorp., 2002 WL 140542 at *1 (S.D.N.Y. 2002) (requiring Defendant provide Plaintiff with the names and last known addresses of decedent's shipmates). Courts have approved the production of such information where a party's former employees possess information relevant to the case. Id. *Page 17 
First Student seeks to depose the following former Jevic employees: Dave Gorman, Ken Adams, James Daulerio, Jim Aromando, Tom O' Donnell, Jim Noone, and Nikketa Lowe. Jevic has responded that it does not have any documents reflecting the addresses of these previous employees. In an effort to locate these individuals Jevic has retained a private investigator and has offered Jim Noone (Former Director of Risk Management) for deposition. Additionally, Jevic hopes to offer Tom O'Donnell (Former Safety Manager) for deposition once his present location has been determined.
The Court finds that to the extent Jevic has been unable to locate the witnesses requested to be deposed by First Student, Jevic should provide the last known addresses of those witnesses so that First Student may attempt to locate and subpoena them. The Court will grant the motion to compel Jevic to provide the witnesses' last known addresses.
 F First Student's Request for a Rule 30(b)(6) Designee To Complete James Daulerio's Deficient Testimony and Document Production 1 Request Nos. 2, 4, and 10
Request No. 2 seeks documentation of any disciplinary action or complaints by Jevic against Craig Benfield as a result of the accident in question. Jevic responds that First Student's counsel chose not to ask Mr. Daulerio any questions at his initial deposition regarding whether or not Craig Benfield was disciplined as a result of the accident. At his deposition, Benfield testified that no disciplinary action was taken against him as a result of the accident. Request No. 4 seeks evidence of any disciplinary actions against Mr. Benfield for any incident and/or any recommendation for further training of Craig Benfield. Jevic responded that First Student's counsel chose not to ask *Page 18 
Mr. Daulerio any questions regarding discipline as a result of the accident. Additionally, Mr. Daulerio stated that he had reviewed Mr. Benfield's file and First Student's counsel chose not to ask him any questions regarding the contents. Additionally, at Mr. Benfield's deposition, numerous questions were asked regarding the topic of disciplinary action on behalf of Jevic.
Request No. 10 seeks Jevic to provide First Student with "information of the accident, all statements, written or oral, of Craig Benfield or his wife, and the company's policies and practices in effect at the time of this accident for dealing with serious accidents involving personal injuries or damage to freight." Jevic responded that it has produced all of the known statements made by Mr. and Mrs. Benfield, and that First Student's counsel chose not to ask Mr. Daulerio any questions regarding Jevic policies including the accident; communications between Jevic and the U.S. Department of Transportation concerning the accident; or the whereabouts of the tractor-trailer involved in the accident.
The Rule 30(b)(6) deposition of Jevic employees was concluded on December 7, 2006, by First Student's predecessor counsel. The alleged deposition deficiencies are a result of a failure on behalf of First Student's predecessor counsel to make the inquiries now raised. To allow First Student to re-depose individuals simply because of a change in counsel would create an undue burden on the other litigants in this matter. The Court denies First Student's Request Nos. 2, 4, and 10 for Rule 30(b)(6) designees.
 2 Request Nos. 6 and 8
Request No. 6 seeks evidence of any G.P.S. satellite tracking information concerning defendant's vehicles and specifically any such evidence relating to the *Page 19 
tractor-trailer operated by Craig Benfield. It also seeks information regarding all electronics that may have assisted or enabled Jevic to know the geographic positions and time spent in each position. Jevic responded that Mr. Daulerio testified regarding the Qualcomm system, and that no documents exist relating to the Qualcomm records for the time period surrounding the accident.
Request No. 8 seeks evidence of Jevic's installation, operation, and purpose of Qualcomm communication or location devices in all Jevic Transportation trucks at the time of the accident in question and, specifically for the particular truck involved. Jevic responded to this request by noting that the Rule 30(b)(6) designee, Mr. Daulerio, provided all relevant information to First Student regarding the Qualcomm systems used in their trucks.
The Rule 30(b)(6) deposition of Jevic's employees was concluded on December 7, 2006, by First Student's predecessor counsel. Any deposition deficiencies that First Student alleges is not a result of insufficient deponent testimony, but rather a failure on behalf of First Student's predecessor counsel to make the inquiries now raised. To allow First Student to re-depose these individuals would create an undue burden on the other litigants in this case and on this Court. Additionally, First Student has failed to prove that Jevic has in its possession any documents regarding the Qualcomm system.
First Student previously deposed Jevic's employees and questioned its corporate representative regarding the Qualcomm system. The Court therefore denies First Student's Request Nos. 6 and 8 for a Rule 30(b)(6) designee. *Page 20 
 3 Request No. 9
Request No. 9 seeks evidence of Jevic's policy and applicable regulations relating to the safety equipment intended, or required, on the vehicle involved in this accident, as well its policies regarding the training of its operators in locating and deploying all such safety equipment. Jevic responded that First Student's counsel chose not to ask Mr. Daulerio any questions concerning this issue; and that the term "safety equipment' was too vague; and that Jevic was unaware of any claim in the case that required additional safety equipment to be present on its truck.
The Rule 30(b)(6) deposition of Jevic was concluded on December 7, 2006 by First Student's predecessor counsel. For all the reasons previously enumerated, it would be inappropriate for this Court to permit First Student to re-depose individuals pursuant to Rule 30(b)(6). The Court denies First Student's Request 9 for a Rule 30(b)(6) designee.
 G First Student's Request To Jevic to Produce all Relevant Documents in Storage in New Jersey
First Student seeks to obtain documents in Jevic's control that allegedly were moved to a New Jersey warehouse after its bankruptcy filing. Jevic maintains it fully answered numerous discovery requests by all parties. After bankruptcy, Jevic sent some of its files to New Jersey for storage. Some of these files were those that were kept in the ordinary course of business. Jevic concedes that some documents do exist in a warehouse in New Jersey, and Jevic's counsel has made attempts to gain information about, and access to, said documents. *Page 21 
The Court finds that to the extent Jevic is able to obtain access to the warehouse in New Jersey, it must provide First Student with the requested relevant documents.
 Conclusion
Based on the aforementioned reasons, this Court hereby grants Plaintiff's Motion in Limine, grants Plaintiff's Motion to Compel Discovery Responses, and denies Plaintiff's Motion for Leave to File a Third Amended Complaint. Furthermore, this Court denies Defendant First Student's Motion for Protective Order, and grants in part and denies in part Defendant First Student's Motion to Compel Discovery Responses from Defendant Jevic Transportation.
Counsel shall present the appropriate order for entry.
[1] Section 31-22-22(a)(1) mandates that:
 "Any person transporting a child under the age of eight (8), less than fifty-seven (57) inches in height and less than eighty (80) pounds in a motor vehicle operated on the roadways, streets, or highways of this state, shall transport the child in any rear seating position of the motor vehicle properly restrained in a child restraint system approved by the United States Department of Transportation under Federal Standard 213. If the child is under eight (8) years old but at least fifty-seven (57) inches in height, or at least eighty (80) pounds the child shall be properly wearing a safety belt and/or shoulder harness approved by the Department of Transportation pursuant to Federal Standard 208 in any rear seating position of the motor vehicle. For the purpose of this section, applying to all parts of this section, `rear seating position' means any seating positions located behind the driver and front seat passenger."
[2] Stating in pertinent part that: "[t]his act shall take effect upon passage." According to the report's notes at the end of the act, it "[b]ecame law without Governor's signature June 14, 2002." P.L. 2002, ch 121.
[3] Section 27-7-2.4 states that:
 "Any person, having a claim because of damages of any kind caused by the tort of any other person, may file a complaint directly against the liability insurer of the alleged tortfeasor seeking compensation by way of a judgment for money damages whenever the alleged tortfeasor files for bankruptcy, involving a chapter 7 liquidation, a chapter 11 reorganization for the benefit of creditors or a chapter 13 wage earner plan, provided that the complaining party shall not recover an amount in excess of the insurance coverage available for the tort complained of."